**ITALIT, INC., Appellant,**

**v.**

**JOHNS-MANVILLE CORPORATION,**
**Appellee.**

**No. 19684.**

United States Court of Appeals
Fifth Circuit.

April 16, 1964.

Robert McKay and Stanton T. Lawrence, Jr., of Pennie, Edmonds, Morton, Taylor & Adams, New York City, for appellant.

C. Willard Hayes and Irvin H. Rimel, of Cushman, Darby & Cushman, Washington, D. C., Herbert S. Sawyer, of Mershon, Sawyer, Johnston, Simmons & Dunwody, Miami, Fla., John A. McKinney, Manville, N. J., for appellee.

Before RIVES and CAMERON,[1] Circuit Judges, and HUNTER, District Judge.

RIVES, Circuit Judge.

This appeal is from an interlocutory judgment finding Claims 1 and 2 of Patent No. 2,738,992 [2] valid and in-

[1]. Circuit Judge BEN F. CAMERON participated in the hearing of the case, but not in its decision. His death occurred on April 3, 1964.

[2]. "1. A pipe coupling for confining a fluid therein comprising, an inner pipe section having an end portion of generally cylindrical outer circumference but comprising two annular portions of different *substantially constant* outside diameters joined by a shoulder extending generally radially outwardly at a relatively steep angle to the axis of said inner pipe section, an outer pipe section having a generally cylindrical inner circumference defining an opening receiving said end portion of said inner pipe section, the annular portion of said inner pipe section end having the smaller outside diameter being located the closer axially to the axially inner extremity of the inner pipe section, the maximum outside diameter of said end portion being somewhat smaller than the diameter of said opening to provide clearance for axial movement and limited canting of the pipe sections relative to each other, said outer pipe section having an annular groove formed generally radially outwardly from its inner circumstance and having a radially outer wall radially opposite at least a part of said annular portion of smaller outside diameter, and a resilient readily deformable gasket in said groove having a greater initial radial thickness than the distance between said radially outer wall of the groove and said radially opposite portion of the outer circumference of said inner pipe section end portion and being engaged therebetween under relatively light radial compressive force in assembled relation and at least slightly flattened in a radial direction, said groove having *generally radially extending* axial end walls and a somewhat greater width axially of the outer pipe section and between said end walls than the thickness of the gasket in that direction in its initially flattened state to provide space for limited axial deformation of the gasket material toward and against either one of the axial end walls of the groove and away from the respective other end wall in response to a fluid pressure differential resulting in a greater effective fluid pressure on that side of the gasket lying toward said respective other end wall of the groove, said shoulder being spaced a desired, predetermined distance from said inner extremity of the inner pipe section, said predetermined distance being such that said shoulder positively orients said inner pipe section in a desired predetermined position axially with respect to said outer pipe section when said pipe sections and gasket are brought together in the aforesaid relationship in assembly of the coupling with said shoulder and the one end wall of said groove axially opposite said shoulder both in contact with said gasket, *said shoulder lying at least in part radially opposite the other one of said end walls of the groove in said assembled relationship*." (Emphasis added for reason expressed in text to footnote 8, infra.)

"2. A pipe coupling as defined in claim 1, in which said outer pipe section is in the form of a sleeve, and comprising further a second inner pipe section having an end portion formed similarly to the first-mentioned inner pipe section end portion and similarly received in, and related to, the opposite end of said sleeve, and a second gasket similarly received therebetween, at least said inner pipe sections comprising hardened, compressed, fibrocement material, said inner pipe section end portions and said sleeve being disposed in generally coaxial relationship, the spacing of the annular wall portions on the inner pipe sections from their respective axially inner extremities being such

fringed. The district court entered findings of fact and conclusions of law[3] which, except for some minor changes, had been prepared by counsel for Johns-Manville.[4]

The patent is for a push-in pipe coupling for use principally with asbestos-cement pipe similar to the coupling for use with cast iron pipe held valid in United States Pipe & Foundry Co. v. James B. Clow & Sons, Inc., N.D.Ala. 1962, 205 F.Supp. 140. That decision was reversed, 5 Cir., 313 F.2d 46, for determination of the issue as to who was the first inventor, with the following ruling as to patentability:

> "The contention that the patent is devoid of any inventive contribution in view of the prior art, and that it was not infringed are both without merit, as is the argument that the claims failed to meet the statutory requirement of definiteness. Also, the claim of file wrapper estoppel was not made out. These matters were carefully considered by the District Court and the findings and conclusions in regard to them find adequate support in the record. To this extent, and except as stated, the judgment is affirmed."

The district court in the present case described what it referred to as "the heart of the invention" in its finding numbered 11 (209 F.Supp. 800, 801):

> "The coupling made and sold by plaintiff in accordance with the patent in suit was a lubricated 'push-in' coupling and was the first one of this type ever used in the asbestos-cement field. The patented coupling consists of an asbestos-cement sleeve having grooves in its inner surface in which rubber sealing rings are seated and arranged to be relatively lightly compressed as the lubricated pipe ends are pushed into the sleeve. The machined ends of the pipes are each provided with a circumferential *shoulder* at a predetermined distance from the end, to engage the rubber rings and to limit the movement of the pipe into the sleeve (Tr. 147, 148). The shoulder on the pipe *in combination* with the sealing ring in the groove in the sleeve is the heart of the invention, accomplishes new and useful results, makes possible an entirely new mode of operation, and the use of the shoulder in combination produces advantages which were not up to then foreseen."

The issuance of the patent carries with it a presumption of validity.[5] Italit's attack on the validity of Claims 1 and 2 (n. 1, supra) is based upon obviousness or lack of invention.[6] On the issue of validity the district court made extensive findings of fact culminating in finding No. 20:

> "20. Although there is no single new element in the plaintiff's patent that constitutes a patentable invention in and of itself, the combination of old elements, or previously known elements, or elements of prior art, particularly as respects the shoulder on the pipe, has produced a new and useful and patentable improvement over all previously known couplings.

that said extremities are spaced at a desired predetermined distance axially from each other with the gaskets and associated wall portions at the opposite ends of the sleeve and on the inner pipe section end portions respectively in contact as aforesaid, and also with the shoulder on each inner pipe section lying at least in part radially opposite the respective said other one of said end walls of the associated groove."

3. Reported as Johns-Manville Corporation v. Italit, Inc., S.D.Fla.1962, 209 F.Supp. 798.

4. For the significance to be attached to that circumstance, see Kinnear-Weed Corporation v. Humble Oil & Refining Co., 5 Cir. 1958, 259 F.2d 398, 401, and the full discussion in Louis Dreyfus & Cie. v. Panama Canal Co., 5 Cir. 1962, 298 F.2d 733, 737–739.

5. 35 U.S.C.A. § 282.

6. See 35 U.S.C.A. § 103.

The elements of claims 1 and 2 of the patent in suit constitute a true patentable combination, and not a mere aggregation of old elements. All of the elements cooperate with each other to perform new and useful results in an improved manner and were combined through the exercise of invention. The new combination of old elements brought together for the first time by the inventor, Heisler, would not have been and was not obvious to one having ordinary skill in the art at the time the invention was made." (209 F.Supp. 802.)

This finding of fact cannot be set aside as clearly erroneous, and it warrants the conclusion that the statutory requirements for patentability have been met.[7]

Claims 1 and 2 are charged to be infringed. One of these claims applies more particularly to a sleeve type while the other applies to a bell and spigot type coupling.[8] Claim 2 is dependent upon Claim 1 and cannot be infringed if Claim 1 is not infringed. The district court was unquestionably correct in that part of its finding No. 20, heretofore quoted, to the effect that each of the elements recited in Claims 1 and 2 were old in the art.

The application for the patent as originally filed contained fourteen claims, all of which were rejected by the examiner upon various grounds, his communication concluding:

"Claims 1 through 14 are further rejected on the ground of undue multiplicity. In view of the relative simplicity of applicant's device and the advanced state of the art as illustrated by the cited references supra, it is believed that applicant's invention if any, may be adequately claimed in not more than two claims."

In an amendment the applicant cancelled ten of the fourteen pending claims and added six new claims, stating that:

"The reference cited and the grounds of rejection applied against the claims originally in this application have been very carefully studied, and the claim structure has been altered by the instant amendment in a manner considered to distinguish patentably from the art and to overcome the several grounds of rejection, including the rejection on the ground of undue multiplicity, for the reasons pointed out below."

Again all of the claims were rejected with the statement that, "This rejection is final." In response, the applicant cancelled all of the claims and added five new claims, three of which, after amendment, became the claims finally allowed. The applicant stated that the new claims "are considerably more specific," and further,

"The claims also provide for clearance for deflection of the pipe sections within the coupling sleeve, and the gaskets involved are specified to be of the readily deformable type, such as used in 'O-ring' constructions, the gaskets being stated to be held under relatively light radially compressive forces so as to provide for easy assembly of the coupling."

The examiner responded that the most detailed claim, which was eventually allowed as Claim No. 3, not here in suit, "appears to be allowable," but rejected the other four claims. After appeal to the Board of Appeals, the applicant cancelled two of the claims and further amended the other two which were eventually allowed as Claims 1 and 2, stating:

"While claims 23 and 24 are still considered allowable over the references in their unamended form, the instant amendment to these claims is

7. See Graver Tank Mfg. Co. v. Linde Air Products Co., 1949, 336 U.S. 271, 274, 275, 69 S.Ct. 535, 93 L.Ed. 672.

8. The patent contains three claims. Claim 3 specifically recites a gasket "having a substantially circular cross-sectional shape in relaxed condition" and is not in this suit.

proposed as more clearly delineating the novelty in the combination from the teaching of the references, as discussed hereinafter in detail."

The language added to Claim 23, which became Claim 1 as finally allowed, is that which we have emphasized in n. 1, supra. The detailed discussion by applicant's attorney reads in part as follows:

"The proposed amendment to line 4 of claim 23 specifies the substantially constant nature of the two different outside diameters of the annular portions joined by the shoulder on the inner pipe section. The proposed amendment to line 26 of claim 23 *leaves no room for any possible doubt as to the direction in which the axial end walls of the groove extend*. The amendments to lines 41 and 43 of claim 23 are considered especially significant in locating the shoulder at least in part radially opposite the same end wall of the groove in the assembled relationship as brought out in allowed claim 25, the difference being that the exact shape of that end wall is not specified in claim 23. This relative location of the said end wall and the shoulder is believed to be a critical feature of the combination, since the particular end wall involved must be so located in order to cooperate with the shoulder in preventing gasket blow-out under positive line-pressure off-conditions. Claim 24, as dependent from claim 23, contains all the novel features thereof, together with the additional novel features recited therein, and should clearly be allowable with claim 23." (Emphasis added.)

While Claim 3 of the patent specifically calls for the gasket to be "circular," Claims 1 and 2 do not contain this express limitation. However, the gaskets defined in Claims 1 and 2, because of the prosecution of the application and because of the relationship set out in the claims of the axial width of the groove with respect to that of the gasket, can only be limited to "O-ring" type gaskets.

This does not mean that the gaskets must be circular or must have an "O" shape, but only that they be gaskets which seal under the "O-ring" principle of sealing. "O-ring" type gaskets may take many different shapes provided that the gasket is readily deformable. For example, an "O-ring" type gasket may be square shaped, delta shaped or X shaped.

"V-ring" seals, which were distinguished over during the prosecution of the application, seal on an entirely different principle than an "O-ring" gasket. They do not depend upon being deformed or squeezed into a space between pipe sections in order to make a seal, but rather depend upon fluid pressure to force the lips of the "V" apart against the parts to be sealed so that the greater the hydraulic pressure, the greater will be the force against the lips pushing them against the parts to be sealed.

In Keystone Driller Co. v. Northwest Engineering Corporation, 1935, 294 U.S. 42, 48, 55 S.Ct., 262, 265, 79 L.Ed. 747, the Supreme Court said:

"We do not attribute the force of an estoppel to what was said by the claimant in seeking to avoid the prior art cited against his broad claims, but we do apply the principle that, *where such broad claims are denied and a narrower substituted, the patentee is estopped to read the granted claim as the equivalent of those which were rejected*."

See also, Southern States Equipment Corporation v. USCO Power Equipment Corporation, 5 Cir. 1953, 209 F.2d 111, 121.

Claims 1 and 2 cannot be given a construction broad enough to encompass Italit's S-S automatic coupling, which utilizes a "V-ring" gasket, that does not move axially in its V-shaped groove to effect any seal.

Italit's coupling does not have the elements specifically defined in Claims 1 and 2. It does not have a groove in the outer pipe section which has "axial end walls" and "a radially outer wall radially opposite at least a part of said annular por-

tion of smaller outside diameter" of the inner pipe section as required in Claim. Instead of the three walls called for, it has two walls, one being a slanted wall (at an acute angle—not radially extending) and the other being a radially extending end wall which join to form a triangular shaped groove. Italit's groove is the type of groove adopted to fit the "V-ring" lip-seal type of gasket Italit uses.

Italit's coupling does not have the *two* "generally radially extending axial end walls" called for in the claims. It does have one such wall. It would be straining things to say that its slanted wall was a "generally radially extending wall portion."

Italit's coupling groove does not have "a somewhat greater width axially of the outer pipe section and between said end walls than the thickness of the gasket in that direction in its initially flattened state to provide space for limited axial deformation of the gasket material towards and against *either one* of the axial end *walls* of the groove and away from the respective *other* end wall * * *" (Emphasis added.) as called for in the claims. The axial width of the groove in Italit's coupling is the same axial width as is the "V-ring" lip-seal gasket which fits into the groove.

Italit's coupling does not have "said shoulder lying at least in part radially opposite the other one of said end walls of the groove in said assembled relationship." The shoulder lies radially opposite a slanted wall of the groove and not any end wall which is "generally radially extending" as the end walls are defined in the claims. The only "radially extending" end wall is not "radially opposite" the shoulder on the pipe end.

Italit's coupling does not have a gasket which is engaged between the radially outer wall of the groove and the outer circumference of the inner pipe section,

so that it is "slightly flattened in a radial direction" and so arranged in the groove that there may be "limited axial deformation of the gasket material toward and against either one of the [generally radially extending] axial end walls * * *." The gasket utilized in Italit's seal is a "V-ring" lip-seal gasket operating on a principle different from the "O-ring" squeeze principle of sealing and does not require any axial deformation to make a seal.

The district court erred in finding that Claims 1 and 2 of the patent in suit have been infringed by the defendant, Italit. The judgment is therefore reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.