In the Matter of IRA HAUPT & CO., a Limited Partnership, Bankrupt.

ONE ESTATE, INC., Appellant,

v.

The CHASE MANHATTAN BANK et al., Appellees (two cases).

ONE ESTATE, INC., Appellant,

v.

MILBANK, TWEED, HADLEY & McCLOY, Appellees.

Nos. 356–358, Dockets 30252–30254.

United States Court of Appeals Second Circuit.

Argued March 21, 1967.

Decided June 2, 1967.

ZAVATT, District Judge:

*Facts*

This is a consolidated appeal by one of the creditors (the former landlord) of Ira Haupt & Co., a Limited Partnership, Bankrupt ("Haupt"), from three orders of the United States District Court for the Southern District of New York, dated respectively March 10, 1965, August 12, 1965 and September 15, 1965, two of which affirmed rulings of Edward J. Ryan, Referee in Bankruptcy, relating to the election and appointment of Charles Seligson, Esq., as Trustee in Bankruptcy of Haupt and one of which affirmed an order of the Referee quashing a subpoena, directed to Milbank, Tweed, Hadley & McCloy, attorneys for the New York Stock Exchange and The Chase Manhattan Bank, and dismissed the petition to review that order. The appellant contends that the district court erred in refusing to reverse the Referee's action in appointing and approving Charles Seligson, Esq., as Trustee, and refusing to declare its attorney, Samuel P. Adelman, Esq., the duly elected Trustee.

Approximately two and one-half years have elapsed since Charles Seligson, Esq., was elected Trustee and the order of his appointment was signed by the Referee on October 6, 1964. Mr. Seligson was the successful "candidate" out of a slate of three attorneys for whom 41 creditors, with filed claims aggregating approximatey $22,500,000, voted. The votes of seven of the limited partners for Abraham Glickman, Esq., were nullified by the ruling of the Referee that the limited partners were disenfranchised by § 44(a) of the Act, 11 U.S.C. § 72(a).[1] The Referee's order was affirmed. In re Ira Haupt & Co., 234 F.Supp. 167 (S.

Samuel P. Adelman, New York City (Alexander Henkin, New York City, on the brief), for appellant.

Edward J. Reilly, Jr., New York City (Milbank, Tweed, Hadley & McCloy, New York City, for Chase Manhattan Bank (National Ass'n), New York Stock Exchange and pro se; Simpson Thacher & Bartlett, New York City, for Manufacturers Hanover Trust Co.; Zalkin & Cohen, New York City, for First Nat. City Bank and Morgan Guaranty Trust Co. of New York, on the brief), for appellees.

Harvey R. Miller, New York City (Seligson & Morris, New York City, on the brief), for trustee-appellee.

Before MOORE and HAYS, Circuit Judges, and ZAVATT,* District Judge.

---

* Of the Eastern District of New York, sitting by designation.

1. § 72. Trustees; creditors' committees; and attorneys
   (a) The creditors of a bankrupt, exclusive of the bankrupt's relatives or, where the bankrupt is a corporation, exclusive of its stockholders or members, its officers, and the members of its board of directors or trustees or of other similar controlling bodies, shall, at the first meeting of creditors after the adjudication, or after a vacancy has occurred in the office of trustee, or after an estate has been reopened, appoint a trustee or three trustees of such estate. If the creditors do not appoint a trustee or if the trustee so appointed fails to qualify as herein provided, the court shall make the appointment.

D.N.Y.1964), aff'd, 343 F.2d 726 (2d Cir. 1965). This ruling left Mr. Seligson and Mr. Adelman (the attorney for Haupt's former landlord, One Estate, Inc.) in contention.

Now Samuel P. Adelman, Esq., the other unsuccessful "candidate," as attorney for Haupt's former landlord (which had voted for Mr. Adelman), seeks a determination that he and not Mr. Seligson was duly elected by a majority in number and amount of the qualified creditors. There is nothing in the record or in the oral argument before this court to suggest that Mr. Seligson is incompetent or lacking in sound judgment; is not performing his duties as Trustee with due diligence; is not expediting the orderly liquidation of the bankrupt's estate or is otherwise ill-equipped for the task to which he was appointed; that the rights and interests of any creditor are being prejudiced by the performance of his duties as Trustee. The interim reports of the Trustee are not a part of the record on this appeal. Were they to contain anything to support any such contentions, one would have expected experienced counsel to have sought their inclusion in appellant's appendix and to have expatiated upon them on the argument of this appeal. In his brief, Mr. Adelman acknowledges that "this proceeding will continue for several more years before it can be finally closed." Yet he seems to complain that "Although the estate has been pending for over two years, it is far from being substantially liquidated." He accuses Mr. Seligson of a lack of diligence in investigating the proofs of claim of the Bank creditors which he attributes to "the fact that he owes his election to the participation of the Banks * * *." (The fact of the matter is that the Referee disenfranchised the Banks upon the same ground that he disenfranchised the limited partners. Mr. Seligson no more "owes his election to the participation of the Banks" than he does to the participation of the limited partners.)

Mr. Adelman recommends himself for the office of Trustee. Declaring him the winner, he argues, would be of benefit to the state; would result in "the replacement of an improperly appointed trustee by a properly appointed and independent trustee" who would "proceed with dispatch * * * in the best interests of the creditors of this estate." Nevertheless, in what appears to be reminiscent of campaign promises, if declared the duly elected Trustee, he "does not intend to replace the general counsel or special counsel heretofore retained by the trustee because they have all served some useful purpose." It should be noted that the Trustee heretofore retained the firm of Seligson & Morris as his general counsel; that the then attorneys for the limited partners moved before the Referee for an order requiring the Trustee to terminate the general retainer and hire other counsel; that the petition to review the Referee's denial of that motion was dismissed and the order of dismissal was affirmed. In re Ira Haupt & Co., 361 F.2d 164 (2d Cir. 1966). If declared the duly elected Trustee, therefore, he would retain Mr. Seligson's law firm as general counsel. Were Mr. Seligson ousted and Mr. Adelman declared the duly elected Trustee, Mr. Seligson could then participate actively and share in the fees of his firm as attorney for the Trustee. He, no doubt, would render all of the legal services and, presumably, Mr. Adelman would be satisfied to have as his general counsel one who, in his opinion, has been derelict in his duties as Trustee and has been biased in favor of the Bank creditors.

Behind the facade of protestation of deep concern for the creditors of Haupt (the New York Stock Exchange and the Banks account for $18,735,186 out of filed claims totaling $22,541,767.36), one can observe a defeated candidate seeking a recount in an election which may involve the prospect of a substantial fee to the successful candidate.

On November 25, 1963, five days after Haupt closed its doors, the Exchange and Haupt's creditor banks entered into an agreement with the general partners of Haupt, the underlying purpose of

which was to provide for the orderly liquidation of Haupt under the supervision of a liquidator. Pursuant thereto the Exchange advanced $9,500,000 from which to pay Haupt's customer creditors; the Banks agreed to defer their claims against Haupt to the extent of two dollars for every dollar advanced by the Exchange; a committee, on which the Exchange and the Banks were equally represented, was appointed; James P. Mahoney, Chief Examiner of the Exchange, was named liquidator; Morton Kamerman, a general partner and sole managing partner of Haupt, was engaged by the liquidator to assist him in the liquidation. All but 150 to 200 of the customer accounts having been liquidated satisfactorily and Mr. Mahoney's expertise being no longer required, the agreement was supplemented on March 10, 1964, so as to provide, *inter alia*, for the appointment of Edward Feldman, Esq., as Liquidator to succeed Mr. Mahoney.[2]

When the Referee dismissed the Chapter XI petition of the limited partners on July 26, 1964, he adjudicated Haupt a Bankrupt and held that Edward Feldman, who had been nominated as trustee in the arrangement proceeding, was not qualified to be the trustee because of his connection with Haupt. At the adjourned first meeting of creditors, held September 11, 1964, the creditors cast their votes for a trustee as follows:

| Number of creditors | Amount of claims | Cast for |
|---|---|---|
| 30 Banks, New York Stock Exchange, brokerage houses, nine employees of Haupt. (The claims of the nine employees totaled $153,944.25. The claims of the Exchange and the Banks totaled $18,735,186.) | $19,118,549.06 | Charles Seligson (an attorney) |
| 4, including appellant One Estate, Inc. (The claims of the landlord total $602,550.) | 636,557.99 | Samuel P. Adelman (an attorney) |
| 7 limited partners | 2,787,660.31 | Abraham Glickman (an attorney) |
| Totals 41 | $22,542,767.36 | |

The Referee adhered to the ruling he had made in the Chapter XI proceeding, i. e., that the limited partners were disenfranchised under § 44(a) of the Bankruptcy Act, 11 U.S.C. § 72(a),[3] which had been affirmed by Judge Palmieri

2. For a more complete statement of the events leading to the dismissal by the Referee of the petition of certain limited partners of Haupt for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 786, see In the Matter of Ira Haupt & Co., 234 F.Supp. 167 (S.D.N.Y.1964), aff'd, 343 F.2d 726, 348 F.2d 907 (2d Cir. 1965).

3. See note 1, supra.

and this court. In re Ira Haupt & Co., supra. He ruled that they were similarly disqualified from voting in the bankruptcy proceeding. He also disenfranchised the New York Stock Exchange and the Banks, holding that, under § 44(a), they constituted "other controlling bodies" of the bankrupt. The Referee then held a hearing on objections to the landlord's claim (which represented the bulk of the amount of claims voted for Mr. Adelman) and to the claims of the nine former employees (which had been voted for Mr. Seligson). He decided not to delay the election of a trustee until a hearing on objections to the landlord's claim was concluded; to provisionally disallow all the claims voted for Mr. Seligson against which objections had been leveled, except the claims of the employees. Whereupon he declared Mr. Seligson to be the elected Trustee upon the following vote:

*For Mr. Seligson*

Nine claims of former employees ..................... $153,944.25

*For Mr. Adelman*

Three claims .................................... 34,006.77

and adjourned the creditors' meeting to September 30, 1964 and again to October 6, 1964, at which time the Referee signed an order appointing Mr. Seligson Trustee.

On appellant's petition to review this order, by an order dated March 10 and entered March 11, 1964, Judge Murphy, (1) affirmed the Referee's disallowance of a portion of the landlord's claim; (2) held that the Referee erred in disenfranchising the Exchange and the Banks under § 44(a); (3) affirmed the Referee's allowance of the employees' claims; (4) affirmed the Referee's approval of Mr. Seligson as Trustee and (5) remanded the matter to the Referee to make further inquiry as to the objections to the landlord's claim and to determine and report on the amount for which it was allowable. In re Ira Haupt & Co., 240 F. Supp. 10 (S.D.N.Y.1965). The landlord appeals from this order.

Pursuant to Judge Murphy's order, the Referee held hearings and filed his report, provisionally disallowing the landlord's claim in excess of $95,615.45 for voting purposes because any such excess was unliquidated and disputed. Without mentioning or counting the votes of the Exchange and the Banks, he reported that the election of Mr. Seligson should stand on the basis of the votes of the nine employees—presumably as follows:

| | Creditors | Amount |
|---|---|---|
| For Mr. Seligson | 9 | $153,944.25 |
| For Mr. Adelman | 3 | $ 34,006.77 |
| | 1 | 95,615.45 |
| | 4 | $129,622.22 |

He adverted to the "atmosphere of general antagonism" which Judge Murphy had mentioned in his opinion of March 10, 1965:

"The atmosphere of general antagonism adverted to by your Honor (Opinion March 10, 1965, p. 22) prevails and will no doubt intensify if further proceedings are required to be had with regard to provisional allowance of the landlord's claim for voting purposes.

Provisional allowance of the landlord's claim for voting purposes will require a trial of at least several days' duration.

I further report that if such a trial should result in a standoff with neither

Mr. Adelman nor Mr. Seligson having a majority in number and amount, I will continue the appointment of Charles Seligson as trustee of this estate."

Judge Murphy signed an opinion order on August 12, 1965 (unreported) affirming the provisional disallowance for voting purposes of the landlord's claim in excess of $95,615.45, affirming the appointment of Mr. Seligson as Trustee and disposing of all other aspects of the petitions to review in accordance with his opinions of March 10, 1965 and his opinion order of August 12, 1965. The landlord appeals from this order of August 12, 1965.

### As to the Exchange and the Banks

Judge Murphy did not pass upon the question of whether § 44(a) applies to a partnership. *Arguendo*, he assumed that it did and determined that the Exchange and the Banks did not come within the classification of "other similar controlling bodies." The Exchange's contribution of $9,500,000 reflects its concern for the preservation of public confidence in the stock market. The Banks sought to protect their interests as creditors. Neither group entered into the agreement of November 25, 1963 for the purpose of reviving Haupt and controlling its operation as a going concern. Their interests were creditor-oriented in an attempt to achieve a liquidation of Haupt in the best interests of its creditors. Rather than being classified as a controlling body of Haupt, their status would appear to be analogous to that of an assignee for the benefit of creditors. "Thus, even if the Committee, and through it the Exchange and the Banks, might be considered a controlling body of Haupt the circumstances of that control when considered in the light of the rationale behind the disenfranchising provisions indicate that the Exchange and the Banks should not have been disenfranchised under § 44, sub. a. * * * Thus, the referee erred in disenfranchising the Exchange and the Banks as other controlling bodies under § 44, sub. a."

Murphy, J., In re Ira Haupt & Co., 240 F.Supp. at 18, 19.

The appellant had objected, before the Referee, to all of the claims voted for Mr. Seligson and had requested the Referee to hold an inquiry under Rule 14 of the Bankruptcy Rules of the District Court as to solicitation of proxies for voting and as to whether Mr. Seligson's election had been procured by votes cast under powers of attorney in the interest of the bankrupt or in any interest other than that of the general creditors. They claim substantial error on the part of the Referee who refused to hold such an inquiry before appointing a trustee, although he did state that he would permit such an inquiry to be made. Between the time when the Referee appointed Mr. Seligson (October 6, 1964) and the time when Judge Murphy rendered his opinion order of March 10, 1965 a hearing was held with respect to the alleged solicitation of claims for the election of the Trustee, during the course of which the Referee quashed a subpoena served by appellant upon the attorneys for The Chase Manhattan Bank and the Exchange. This would suggest that appellant was claiming improper solicitation not only of the votes cast by the nine employees but also of the Exchange and the Banks.

Objection to the votes of the Exchange and the Banks was made not only under § 44(a) but on the further ground that all of the Banks had received preferences. The question of alleged preferences was settled at a later date culminating in an order of the Referee (after hearings thereon) dated December 6, 1965, which was affirmed, on a petition to review, by Judge Bonsal. In re Ira Haupt & Co., 252 F.Supp. 339 (S.D.N.Y.1966). The only appeal from Judge Bonsal's order was withdrawn and discontinued by stipulation dated November 23, 1966.

The appellant contends that the validity of an election and appointment must be determined as of the date of the election and appointment; that, if claims have been provisionally disallowed or erroneously allowed on that date, subsequent proceedings may not relate retro-

actively to the date of the election and appointment so as to allow claims then disallowed or disallow claims then allowed; that, therefore, the claims of the Exchange and the Banks, disallowed by the Referee, may not be allowed retroactively because of the subsequent settlement of the question of alleged preferences. Further, appellant contends, the claims of the creditors may not be voted until after the Referee holds hearings and makes a determination of the question of the alleged improper solicitation of proxies.

### As to the Nine Former Employees of Haupt

These claims are not included in either of the appendices. From Judge Murphy's opinion order of March 10, 1965, 240 F.Supp., supra, we learn that these employees claimed, in the broadest terms, unpaid balances of compensation due for the year 1963, totaling $153,944.25. At the meeting of September 11th, the attorney for the limited partners was directed by the Referee to state his objection to these claims on their face. He objected upon the ground that, on their face, they did not state the bases for the claims. His request for an adjournment to "find out in short order what the facts are" was denied and the Referee allowed these claims without any testimony of the bankrupt's representative. Testimony was taken, however, at the meetings of September 30th and October 30th at which Mr. Kammerman, the managing partner of Haupt, and some of the employees testified as to the oral salary arrangements between Haupt and these employees at the time of their employment, and as to alleged fraud in the filing of these claims. Further, an examination was had of an associate of the law firm representing the Exchange and one of the Banks on the question of solicitation. A further hearing on the question of solicitation appears to have been held on November 25th. At the conclusion of the hearing on October 30th the Referee found the claims of the employees to be bona fide and, at the conclusion of the hearing on November 25th, found that there had been no improper solicitation of these claims. Despite the Referee's direction that orders thereon be settled, no orders have been entered on these decisions of the Referee.

Had the Referee on September 11th had the benefit of the testimony adduced on September 30th, October 30th and November 25th, it would not have been error for him to have allowed these claims of these employees. Appellant contends, nevertheless, that it was error to have allowed these claims on September 11th; that this error may not be cured by the subsequent testimony and that, therefore, these claims could not be voted for Mr. Seligson on September 11th. They cite In re Pan-American Match Co., 242 F. 995 (D.Mass.1917) and In re Malino, 118 F. 368 (S.D.N.Y. 1902), for the proposition that the Referee had no power to determine on September 11th that these claims could be voted, because of the objections then made. Under the circumstances, appellant argues, the Referee had only two alternatives—(1) to suspend the claims and go forward with the election without them or (2) to delay the election and hear the objections sufficiently to determine whether these claims could be voted. In In re Malino, supra, it was held:

"it does not rest in the discretion of the Referee to allow claims as voting bases when objections are made, which are apparently genuine. While the selection of a trustee can not be tied up indefinitely by obstructive tactics, which are obviously for the purpose of delay * * * and in proper cases provisional allowances or disallowances may be made in order that a trustee may be expeditiously selected nevertheless the proceeding should not be so summary as to exclude the consideration of all objections. Objecting creditors, and the bankrupt are entitled to a hearing upon the objections for the purpose of determining, at least, whether they are honestly made and there is reasonable ground for

their consideration. These facts being established, the claims should not be allowed for the purpose of voting.

The election of the trustee Wendt is set aside and the matter remitted to the Referee for further proceedings in conformity herewith."

In In re Pan-American Match Co., supra, it was held:

"Objection having been made to them (certain claims), it was discretionary with the referee, either to delay the election and go into the objections sufficiently to determine whether the claims should be voted, or to suspend the claims and go forward with the election without them. In taking the latter course, it does not appear that he abused his discretion."

Such an impasse, as is suggested by appellant, in this twentieth century in a financial debacle of such magnitude involving the integrity of stock market activity at the hub of our nation's financial and industrial systems (not to mention the interest of the unsecured creditors of Haupt) would be intolerable. If we apply appellant's argument to all of the claims filed by unsecured creditors (aggregating $22,541,767.36), all but three (aggregating $34,006.77) should not have been permitted to vote on September 11th, because objections had been raised; the claim of the landlord should not have been allowed, *nunc pro tunc,* to the extent of $95,615.45 (based upon testimony subsequent to September 11th) and the election of a trustee in this very substantial bankruptcy should have been determined by only three creditors with relatively minuscule claims. If objections had been raised to these three claims, as well, no election could have been held until after hearings and determinations as to all claims of all creditors, regardless of how protracted the hearings and how much futher delay would have been required in order to afford ample time to the Referee to make his findings and render his opinion. The appellant seems to overlook that provision of section 44 of the Act which empowers the Referee to appoint a trustee when the creditors fail to elect one,[4] unless it is contending that, under the circumstances, he did not have that power.

Judge Murphy was on solid ground when he ruled that, since on a petition to review, the district court "may properly receive further evidence to determine the correctness of the result reached by the referee we see no reason why we might not likewise consider evidence adduced before the referee although subsequent to the election (as was the testimony of September 30th and October 30th) and to the referee's approval of the trustee (as was the testimony of October 30th)." In re Ira Haupt & Co., 240 F.Supp. at 28. See In re G. E. C. Securities, Inc., 223 F.Supp. 861 (S.D.N.Y.1963), aff'd, 331 F.2d 665 (2d Cir. 1964).

### A Referee's Conduct of an Election

The administration of a bankrupt estate is left largely to the Referee, whose acts in administrative matters should not be set aside unless he has committed a plain error of law or has abused his discretion. In re G. E. C. Securities, Inc., supra; In re Rosenfeld-Goldman Co., 228 F. 921 (D.Mass.1915). One such administrative matter is the election and appointment of a trustee. The choice of the creditors is subject to the power of the Referee to disapprove the appointment of their choice, if he finds that the Trustee so elected would favor those who voted for him by any means—malfeasance, misfeasance, nonfeasance or partiality. Section 2a(17) of the Act, 11 U.S.C. § 11(a) (17). This supervisory power over the election relates not to the right of the creditors to vote but to the qualification of the proposed Trustee elected by them.

The Referee's function in the election and appointment of a trustee is to exercise a legal discretion to expedite the election, secure an impartial trustee and approve or disapprove the appointment, depending upon the circumstances

---

4. See note 1, supra.

of the particular case. In re Deena Woolen Mills, 114 F.Supp. 260, 267 (D. Me.1953). See also Sloan's Furriers Inc. v. Bradley, 146 F.2d 757 (6th Cir. 1945). In the interest of the orderly administration of bankrupt estates, a reviewing court exercises some degree of judicial restraint, out of regard for the expertise of the Referee in Bankruptcy, and does not lightly set aside the appointment of a trustee. Olympic Finance Co. v. Thyret, 337 F.2d 62, 68 (9th Cir. 1964); In re Rosenfeld-Goldman Co., supra, 228 F. at 924.

General Order 47 of the General Orders in Bankruptcy, 11 U.S.C. fol. 1 § 53 provides in part:

" * * * the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous."

Here we have two reports of the Referee affirmed by Judge Murphy's orders of March 10 and August 12, 1965. This court has held that "where an appeal brings for review concurrent findings of fact by the referee and the district court, they can be set aside only if 'clearly erroneous.' " Simon v. Agar, 299 F.2d 853 (2d Cir. 1962). See also In re G. E. C. Securities, Inc., supra, 331 F.2d at 656 and Margolis v. Nazareth Fairgrounds & Farmers Mkt., Inc., 249 F.2d 221, 223 (2d Cir. 1957). The record fails to support appellant's contention that the concurrent findings of fact of the Referee and the court below were clearly erroneous as to the disallowance for voting purposes of the landlord's claim in excess of $95,615.45 or its contention that the rulings of the Referee and the court below were erroneous as a matter of law as to (1) the sufficiency of the proofs of claim of the nine former employees of Haupt; (2) the disenfranchisement of the limited partners.

■■■ Nor does the record support the appellant's contention that the court below erred as a matter of law in its determination as to the right of the Exchange and the Banks to vote their claims for a trustee. If "The law is the last result of publick Wisdom acting upon publick Experience" [5] one would be hard put to justify an interpretation of section 44 that would disqualify the Exchange and the Banks as "other controlling bodies." The purpose of disenfranchising provisions is to prevent the election of a trustee who may be too friendly to the bankrupt and may fail to protect the interests of creditors. In re Latham Lithographic Corp., 107 F.2d 749, 750 (2d Cir. 1939) (dictum); In re Ira Haupt & Co., 234 F.Supp., supra, at 171. It is suggested in West Hills Memorial Park v. Doneca, 131 F.2d 374 (9th Cir. 1942), that to add to those specifically disenfranchised by the Act would be tantamount to judicial legislation. Section 44 (a) has been construed narrowly. Schwartz v. Mills, 192 F.2d 727 (2d Cir. 1951); In re Latham Lithographic Corp., supra; In re Universal Seal Cap Co., 40 F.Supp. 420 (E.D.N.Y.1941); In re Page Displays, Inc., 35 F.Supp. 140 (S.D.N.Y.1940).

■■■ Since Mr. Seligson was duly elected and appointed without counting the votes of the Exchange and the Banks, the appeal from the order of Judge Cashin, affirming the order of the Referee quashing the omnibus subpoena, is dismissed as moot and we need not determine whether that order is appealable. The orders of the court below, dated March 10 and August 12, 1965, are affirmed.

5. Samuel Johnson, Miscellanies, i, 223.