**JOHNS–MANVILLE CORPORATION,**
Plaintiff-Appellant,

v.

**CEMENT ASBESTOS PRODUCTS COM-
PANY, Defendant-Appellee.**

No. 28659.

United States Court of Appeals,
Fifth Circuit.

July 13, 1970.

Hobart A. McWhorter, Jr., Birmingham, Ala., C. Willard Hayes, John S. Hale, Washington, D.C., John A. McKinney, Joseph J. Kelly, Manville, N. J., for plaintiff-appellant; John S. Hale,

Cushman, Darby & Cushman, Washington, D. C., of counsel.

Hugh P. Carter, Drayton T. Scott, L. Murray Alley, Birmingham, Ala., for defendant-appellee; Jennings, Carter, & Thompson, Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., of counsel.

Before TUTTLE, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

In a suit brought by Johns-Manville Corporation (J-M) against Cement Asbestos Products Company (CAPCO) for infringement of Letters Patent No. 2,738,992, the District Court found Claims 1 and 2 invalid because of anticipation and obviousness; but if valid, there was infringement. J-M appeals. We affirm.

The patent in suit is entitled "Pipe Coupling" and is claimed to be an improvement in the field of couplings for joining the ends of pipes. It was granted to J-M as assignee of the inventor, Robert Heisler.

■ The validity of this patent has previously been considered by this Court in Italit, Inc. v. Johns-Manville Corporation, 5 Cir. 1964, 331 F.2d 663, cert. denied, 379 U.S. 836, 85 S.Ct. 71, 13 L.Ed. 2d 43. There we held the patent valid but not infringed by a coupling which worked on a V-ring principle. In that litigation, however, neither the Bell coupling nor other couplings considered by the District Court in this case were introduced into evidence. Because of the difference in parties and prior art there considered, that decision adjudging the patent valid is not binding on either principles of res judicata or estoppel by judgment. See Edward Valves, Inc. v. Cameron Iron Works, Inc., 5 Cir. 1961, 286 F.2d 933, 937, rehearing denied and decision modified, 289 F.2d 355, cert. denied, 368 U.S. 833, 82 S.Ct. 55, 7 L.Ed. 2d 34; Graham et al. v. Cockshutt Farm Equipment, Inc., 5 Cir. 1958, 256 F.2d 358.

■ Although a presumption of validity ordinarily attaches to patents that have survived the scrutiny of the Patent Office, this presumption rests on the fact that the approval is a species of "administrative determination supported by evidence." Beckman Instruments, Inc. v. Chemtronics, Inc., 5 Cir. 1970, 428 F. 2d 560. Accordingly, when a defendant in a patent infringement suit attacks the validity of a patent on the ground that it was issued without a consideration of prior art not submitted to the Patent Office, the basis for the presumption vanishes, and the presumption is significantly weakened. Beckman Instruments, Inc. v. Chemtronics, Inc., *supra;* Zero Manufacturing Co. v. Mississippi Milk Producers Ass'n, 5 Cir. 1966, 358 F.2d 853; Cornell v. Adams Engineering Co., 5 Cir. 1958, 258 F.2d 874. The file wrapper in the Heisler patent shows that the Patent Office did not consider the Bell coupling, discussed *infra,* or several other patents relied upon by CAPCO to show anticipation and obviousness.

The Heisler coupling device consists of a combination of an outer pipe, either a bell or a sleeve, in which there is an O-ring groove at each end, an O-ring gasket in each groove, and a shoulder on the inner pipe so located that, when pushed against the O-ring, further movement of the inner pipe relative to the outer pipe is arrested or stopped, thus assuring that the inner end of the pipe does not strike the bell or the end of another pipe when a sleeve is employed. The coupling thus affords end separation of the inner pipes which is especially important when asbestos-cement pipe is employed because asbestos-cement has the inherent characteristic of being expansible under increase in moisture content such as is encountered when put into water main service.[1] By providing space to permit expansion of the individual sections of the pipe the device avoids the establishment of a rigid, abutting engagement between pipe ends and the

---

1. The claims in the patent are not limited, however, to couplings made solely for asbestos-cement pipe.

line as a whole is afforded greater flexibility. Flexibility is also afforded by the use of gaskets that seal on the O-ring principle. The essential characteristic of an O-ring seal is that the rubber gaskets are readily deformable because they do not fill the O-ring groove and, thus the gasket yields when pressure is applied by the pipe thereby allowing limited canting.[2] The combination of parts in the Heisler patent produces a joint that is leak-proof and resistant to blow-out of gasket rings under high internal pressure while at the same time it is relatively easy to assemble even under adverse construction conditions. Its commercial utility is obvious.

The District Court found that important instances of prior art, in the form of patents, publications and prior uses within the United States, were proved and relied upon by CAPCO and that these were not made known either to the District Court or to the Court of Appeals in the *Italit* litigation and they were not considered by the Patent Office. The Court found that the following instances of prior art disclosed the precise combination of elements covered by the patent in suit and constituted literal anticipations of the same: Ulrich, U.S. Patent 2,533,640, Dec. 12, 1950; Earle et al., U.S. Patent 2,674,469 April 6, 1964; quick disconnect couplings of the Hansen Manufacturing Company; the catalogue of the Hansen Manufacturing Company with drawings disclosing the combination; quick disconnect couplings of the Breco Company; the so-called Bell Telephone conduit manufactured and sold by J-M and the J-M letter dated February 8, 1949, accompanying the drawing.

The District Court also found that, even if it were mistaken in holding that the instances of prior art specifically discussed in its findings of fact constituted anticipations of Heisler's Claims 1 and 2, the art as a whole, and, more particularly the Bell Telephone conduit coupling, rendered the claimed Heisler combination obvious within the purview of 35 U.S.C.A. § 103.[3] Since we affirm on the ground of obviousness, it is unnecessary to reach the anticipation issue. *Cf.* Sisko v. Southern Resin & Fiberglass Corporation, 5 Cir. 1967, 373 F.2d 866, cert. denied, 389 U.S. 824, 88 S.Ct. 60, 19 L.Ed.2d 78; J. R. Clark Company v. Murray Metal Products Company, 5 Cir. 1955, 219 F.2d 313.

In Graham v. John Deere Co., 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, the Court construed the language of 35 U.S.C.A. § 103 to mean that a patent may not be obtained, although the invention has not been identically disclosed in the prior art, when the differences between the patent and the prior art are such that they would have been obvious to a person having ordinary skill in the art to which the subject matter pertains. Sisko v. Southern Resin & Fiberglass Corporation, *supra*, 373 F.2d at 868; *accord*, Up-Right, Inc. v. Safway Products, Inc., 5 Cir. 1966, 364 F.2d 580.

In determining the legal question of the validity or invalidity of a patent due to obviousness, *Graham* requires that the Court establish the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art at the time of the invention under attack.

---

2. In *Italit, supra,* we held that the claims of the Heisler patent were limited to gaskets which operate on an O-ring principle, i. e., gaskets which are readily deformable when pressure is applied.

3. 35 U.S.C.A. § 103 provides:
  A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

In this case the District Court found that the most important part of the prior art, as to both scope and content, was a coupling made by J-M in 1948.[4] A drawing of the coupling, together with specifications concerning it, were sent by J-M to Bell Telephone Laboratory Personnel. Sometime in 1949, 23,000 feet of a conduit equipped with that coupling were installed by the New York Telephone Company in the area of Brentwood, Long Island. J-M conceded that this conduit, equipped with the coupling, was commercially produced by it, offered for sale, sold and publicly used in the United States, all more than one year prior to the filing of the application for the patent in suit.

The Bell coupling consisted of an asbestos-cement outer sleeve with a groove in each end. Inside each groove was a rubber O-ring gasket. The coupling, when assembled, consisted of the sleeve which had two inner pipes inserted into it with the O-rings interposed between the inner pipes and the sleeve and seated in the grooves. Each of the inner pipes had a shoulder located close enough to the ends of the pipe so that, when assembled and with the shoulder in contact with the O-rings, the inner ends of the two inner pipes were prevented from contacting each other.

In the District Court, and on this appeal, J-M asserts that there are two crucial differences between the Bell coupling and the Heisler coupling. According to J-M, the O-ring gaskets in the Bell coupling, when assembled, were slightly wider than the axial extent or width of the grooves in which they were seated and, secondly, the Bell coupling was assembled by the "roll-in" method instead of by the "push-in" method.

We agree with the District Court's rejection of the contention that the method of assembly was a valid distinction. Claims 1 and 2 of the Heisler patent were not limited to the method or procedure by which the parts were assembled. The claims covered the assembled combination and contained no limitation which required that the parts be assembled by any specific method. Moreover, as the District Court observed, "[b]y simply making the O-rings large enough in diameter to fit in the grooves without stretching them over the inner pipes and by tapering the ends of the inner pipes, the Telephone conduit coupling can be assembled by the 'push-in' or 'push-on' method."

J-M's other contention, that the gaskets were a different size, is said to be crucial because the greater axial pressure exerted by the larger gasket in the Bell coupling prevents the gasket from being readily deformable, the feature which this Court in *Italit* held was the essential ingredient in an O-ring seal. J-M argues that the difference in gasket size would not have been obvious to one skilled in the art because the whole principle of the Bell coupling, that of a friction-fit, compression seal to prevent pipe movement in either direction, would be destroyed if a smaller gasket were to be used. The shoulders on the inner pipes of the Bell coupling are allegedly extraneuos as a result of the friction-fit, and therefore the relationship between the shoulders and the O-ring gasket which we held were the "heart" of the invention in *Italit* is lacking.

J-M contends that the District Court relied heavily upon a drawing of the Bell coupling and a piece of the coupling with a small portion of the outer sleeve cut away so that the coupling in its assembled position could actually be observed. This reliance, it is argued, was misplaced because, according to J-M, both the drawing and the coupling exhibit were misrepresentations of the actual Bell coupling in that the gaskets were represented to be smaller than the groove spaces.

---

4. Although the Bell conduit evidently did not contain a fluid, CAPCO manufactured a conduit with couplings having precisely the same specifications as the Bell coupling. This was found to be leakproof and there was no evidence of gasket extrusion in any of the couplings.

Even assuming that the gasket completely filled the groove, the shoulder on the inner pipe hits the side of whatever O-ring or gasket is present and thus stops inward movement of the inner pipe. The shoulder in contact with the gasket would also cooperate to prevent gasket blowout, since it reduces the size of the opening through which the gasket could extrude under positive line pressure. Thus the precise shoulder O-ring stop function of the Heisler patent is present, and the only thing remaining to be done to conform the Bell coupling exactly to the Heisler coupling would be to make the gasket smaller to satisfy the O-ring principle of operation.

The District Court found that, assuming, *arguendo*, the gasket in the Bell coupling when compressed was slightly wider than the groove in which a portion of it rested, "[i]n 1949 it would have been well within the skill of a mechanic familiar with the well known 'O-ring principle,' to make the groove slightly wider than the gasket." We agree.

J-M does not contend that the O-ring principle was not well known and established in the art. The District Court cited as examples of the use of the O-ring principle the Canadian Patent 521,752, issued February 14, 1956, the Hansen and Breco couplings and the Ulrich and Earle patents mentioned above.[5] We are convinced that it would be obvious to one skilled in the art that decreasing the size of the gasket in the Bell coupling would result in increasing the canting and flexibility of the pipe line, without increasing the possibility of gasket blowout.

 We conclude that, when the prior art is considered together, the subject matter of Claims 1 and 2 of the Heisler patent would have been obvious to a person having ordinary skill in the art at the time. The claims thus did not rise to the level of an invention.

Finally, J-M questions the propriety of taxing it with the costs of charts and physical exhibits, produced by CAPCO, amounting to $1415.78. There is no statutory provision for the taxation of charts and exhibits as costs. We think that the statutory omission is salutary.

Under Rule 16, F.R.Civ.P., the court may authorize, prior to trial, the production of models and charts. This procedure avoids the possible abuse of incurring oppressive costs by one party, ex parte, which may be taxed to his adversary, and yet provides for full utilization of charts and exhibits necessary to the proper and efficient disposition of the case. No prior approval having been obtained from the Court by CAPCO to produce the models and charts in question, the costs must be disallowed. Specialty Equipment & Machinery Corp. v. Zell Motor Car Co., 4 Cir. 1952, 193 F.2d 515, at 520–521.

Affirmed in part, reversed in part.

5. Apparently the O-ring principle of sealing was first disclosed in the Christiansen

Patent No. 2,180,795, dated November 21, 1939.