**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 93-3756

_____

LOUISIANA POWER & LIGHT COMPANY,

Plaintiff-Appellee,

versus

FRANCIS S. KELLSTROM, ET AL.,

Defendants,

FRANCIS S. KELLSTROM, ET AL.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

(April 10, 1995)

Before WIENER, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:

Louisiana Power & Light Co. ("LP&L") sued multiple defendants[1]

for antitrust and RICO violations, and the jury rendered a verdict

in LP&L's favor against five defendants[2] and against LP&L on the

remainder of its claims. Pursuant to 15 U.S.C. § 15[3] and Fed. R.

---

[1] The defendants were Fischbach & Moore, Inc., Fischbach Corp., Francis S. Kellstrom, Commonwealth Electric Co., Howard P. Foley Co., L.K. Comstock & Co., Inc., LKC, Inc., Commonwealth Cos., John D. Keys, Lewis E. Eastman, J.R. Sturgill, Jr., and Paul M. Murphy.

[2] Fischbach & Moore, Inc., Fischbach Corp., Francis S. Kellstrom, Commonwealth Electric Co., and Howard P. Foley Co.

[3] This section provides:
[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall recover threefold the damages by him sustained, and the cost of

Civ. P. 54(d),[4] the district court awarded attorneys' fees to LP&L on its successful claims and to the prevailing defendants on theirs.[5] Defendants Fischbach & Moore, Inc., Fischbach Corp., and Francis S. Kellstrom (collectively "Fischbach") appeal the award of attorneys' fees to LP&L. Defendants L.K. Comstock & Co., Inc. and LKC, Inc. (collectively "Comstock") appeal the amount of the district court's taxation of costs against LP&L. We affirm in part, modify and affirm in part, and reverse and render in part.

**I**

In its antitrust and RICO suit, LP&L alleged that the defendants had conspired to rig the electrical bids for the Waterford 3 nuclear power plant project. Shortly before trial, Comstock made an offer of judgment to LP&L under Rule 68 of the Federal Rules of Civil Procedure,[6] which offer LP&L refused. Following approximately six years of pretrial preparation and eight-weeks of trial, the jury found for LP&L on its bid rigging claims against Fischbach, Commonwealth Electric Co., and the Howard

_____

suit, including a reasonable attorney's fee.
15 U.S.C. § 15 (1988).

[4] Rule 54(d) provides:
Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . .
Fed. R. Civ. P. 54(d).

[5] L.K. Comstock & Co. and LKC, Inc. are the only prevailing defendants involved in this appeal.

[6] *See infra* Part II (Comstock Appeal), A.

-2-

P. Foley Co.[7] but found against LP&L on its claims against Comstock. Although LP&L had requested $15-17 million in damages, the jury awarded it only $500,000.[8]

After trial, LP&L filed an application for an award of $281,668.66 in costs and $5,205,296.96 in fees. Comstock filed an application for costs that eventually totalled $71,264.07. Comstock also moved to amend the judgment to include its attorneys' fees based on its Rule 68 offer of judgment.

After receiving multiple motions to review elements of the various cost and fee applications, the district court held a hearing on all such applications. Fischbach challenged portions of LP&L's fee request, and LP&L challenged Comstock's cost request. The district court took the matter under submission and eventually entered its findings and conclusions, awarding $4,182,893.73 in fees and costs to LP&L and $33,743.47 in costs to Comstock but denying Comstock's Rule 68 and Rule 26 requests and Fischbach's Rule 26 request.

Fischbach appeals the award of fees and costs to LP&L, contending that the district court erred by 1) failing to reduce the number of hours awarded; 2) failing to reduce the hourly rates awarded; 3) failing to reduce the lodestar more than it actually did; 4) awarding postjudgment interest from the date of judgment on the merits, rather than from the date of the final fee award; and

---

[7] Commonwealth Electric Co. and the Howard P. Foley Co. are not parties to this appeal.

[8] Under 15 U.S.C. § 15 (1988), this amount was trebled for a total recovery of $1.5 million.

5) awarding fees for LP&L's experts' response to discovery while denying the same to Fischbach. Comstock appeals its award of costs, arguing that the district court erred by 1) refusing to award fees under its Rule 68 offer of judgment; 2) awarding fees for LP&L's experts' response to discovery while denying the same to Comstock; and 3) refusing to award fees and costs for pursuing its cost recovery.

II

**The Fischbach Appeal:**

Fischbach challenges several elements of the award of attorneys' fees and costs to LP&L. First, Fischbach asserts that the district court erred in determining the "lodestar" amount by accepting both the total hours and the hourly rates submitted by LP&L. Second, it disputes as inadequate the district court's downward adjustment of the lodestar. Third, Fischbach disagrees with the date chosen by the district court for the start of postjudgment interest. Last, it asserts that the district court should either deny LP&L's costs for experts' response to discovery or grant these costs to both parties.

A

In addressing Fischbach's assertion that the district court erred in its calculation of the base lodestar, we note that determination of reasonable attorneys' fees involves a two-step procedure. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983) Initially, the district court must determine the reasonable number of hours expended on the

-4-

litigation and the reasonable hourly rates for the participating lawyers. *Id.* Then, the district court must multiply the reasonable hours by the reasonable hourly rates. *Blum v. Stenson*, 465 U.S. 886, 888, 104 S. Ct. 1541, 1544, 79 L. Ed. 2d 891 (1984) (defining base fee to be product of reasonable hours and reasonable rate); *Hensley*, 461 U.S. at 433, 103 S. Ct. at 1939 (defining product of hours reasonably expended and reasonable hourly rates as "[t]he most useful starting point"); *Brantley v. Surles*, 804 F.2d 321, 325 (5th Cir. 1986) (stating hours multiplied by rate to be normal basis for fee). The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case. *Brantley*, 804 F.2d at 325. Determinations of hours and rates are questions of fact. *See Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990) (reviewing hours for clear error). Accordingly, we review the district court's determination of reasonable hours and reasonable rates for clear error. *See Blanchard v. Bergeron*, 893 F.2d 87, 89 (5th Cir. 1990) (reviewing underlying factual determinations for clear error).

**1**

Fischbach challenges the district court's allowance of certain hours claimed by LP&L. As noted, the first step in determining reasonable attorneys" fees is an evaluation of the number of hours reasonably expended. *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214 (3d Cir. 1978). The district court must determine whether the hours claimed were "reasonably expended on

the litigation." *Alberti v. Klevenhagen*, 896 F.2d 927, 933-34 (5th Cir.), *vacated on other grounds*, 903 F.2d 352 (5th Cir. 1990); *see also Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939 ("The district court also should exclude from this initial fee calculation hours that were not `reasonably expended.'"). Moreover, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941; *see also Bode*, 919 F.2d at 1047 ("[T]he party seeking reimbursement of attorneys' fees . . . has the burden of establishing the number of attorney hours expended, and can meet that burden only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement.").

Accordingly, the documentation must be sufficient for the court to verify that the applicant has met its burden. *Id.* "In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Id.; see also Hensley*, 461 U.S. at 433, 103 S. Ct. at 1939 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."). Thus a district court may reduce the number of hours awarded if the documentation is *vague* or *incomplete*. *See Alberti*, 896 F.2d at 931 (refusing to

-6-

accept incomplete documentation "at face value"); *Leroy v. City of Houston (Leroy I)*, 831 F.2d 576, 585-86 (5th Cir. 1987) (finding clear error and abuse of discretion when district court accepted "faulty records" without making reduction); *cf. Hensley*, 461 U.S. at 433, 103 S. Ct. at 1939 (counseling that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly").

Fischbach contends that the district court clearly erred in accepting all of the hours submitted by LP&L. Fischbach first notes that LP&L failed to provide contemporaneous billing records for certain time periods. Specifically, Fischbach points out that LP&L submitted (1) only quarterly summaries for the period from February 1986 to July 1987, totalling $115,070 in requested fees; (2) only month-end summaries for two attorneys during 1987 and 1988, totalling $154,080 in requested fees; (3) no daily time records for November and December 1988, totalling $82,915 in requested fees; and (4) no supporting documentation at all for the $6,465 in fees of one attorney, J.P. Madigan.

Failing to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours. *Heasley v. Commissioner*, 967 F.2d 116, 123 (5th Cir. 1992). After painstakingly reviewing the instant record, we conclude that the district court failed to determine properly whether some of the hours submitted were reasonably expended and that LP&L failed to satisfy its burden of proving its entitlement to compensation for

some of the hours submitted.

The district court stated that it had not "undertake[n] a dollar-by-dollar or an hour-by-hour analysis" of LP&L's records, but that "[a] just and equitable result can be obtained by following existing case law on what constitutes a `reasonable' attorney's fee." As to the specific items of which Fischbach complains, this appears to fall short of the standard required of district courts.

> The district court is not only required to determine whether the total hours claimed are reasonable, but also whether particular hours claimed were reasonably expended. The court's reference to deeming hours to be reasonably expended is troubling because it strongly suggests that the district court did not abide by this standard. It is not the case that all claimed time is a fortiori reasonably expended if the *total hours* claimed by counsel appear to reflect sound legal judgment and resulted in satisfactory results.

*Alberti*, 896 F.2d at 932. Similarly, we find somewhat troubling the district court's decision to decline a full analysis on the items complained of; therefore, as to those hours, "[i]t does not appear from this record that the district court determined if particular hours claimed were reasonably expended on the litigation." *Id.* at 933.

Further, LP&L's challenged records do not provide this court with sufficient information to determine whether all of the amounts requested were reasonably expended on this litigation.[9] *See*

---

[9] For example, the documentation for the fourth quarter of 1986 consisted of the following summary:

> We traveled to New York and deposed defendants Comstock and LKC,Inc. We reviewed extensive documentation concerning Fischbach & Moore's bids to LP&L, and we deposed Fischbach & Moore in Kenner, Louisiana. We deposed Lord Electric Company in New York City; we

-8-

*Leroy I*, 831 F.2d at 585 (reversing district court's acceptance of total hours where billing records reflected that "some were reconstructed, after-the-fact summaries"). Despite Fischbach's urging us to eliminate entirely the hours covered by the quarterly and monthly summaries and the period of November to December, 1988, we find that the documentation supports an award of *some* amount of hours. Normally, we would remand to the district court for it to determine an appropriate reduction. Because the record contains sufficient information to allow a fair determination of a reasonable fee, however, we choose to exercise our option to modify the fee award on our own.[10] Therefore, in the exercise of our

traveled to Lincoln, Nebraska and deposed Commonwealth Electric Company. We reviewed transcripts of all these depositions when produced.

We brought formal discovery complaints to the Court and argued them to the Magistrate, who ordered each of the defendants to provide supplemental discovery, which we reviewed. The Magistrate also ordered legal memoranda on the discovery of grand jury materials, which we prepared after research. We reviewed the memoranda filed by others.

We conferred with Company personnel and employees and attorneys for Ebasco Services, Inc. concerning interrogatories and requests for documents submitted to LP&L by defendants Fischbach & Moore and Comstock. We reviewed extensive documentation produced by Ebasco and prepared answers and response to defendants' discovery demands. We conferred with opposing counsel and the Magistrate concerning LP&L's production of documents.

We extensively conferred with LP&L's investigator and reviewed reports concerning other price-fixing litigation involving defendants, and we conferred with other attorneys of other injured parties. We prepared bankruptcy pleadings to obtain discovery from E.C. Ernst Company.

A fee total of $23,900 was submitted for this work. Unfortunately, this documentation provides no basis upon which we could determine if $23,900 or $123,900 or $2,390 was reasonably expended for these services. There is no indication of the number of hours expended per task, by whom, for what, and at what rate. Without such basic information, no *Hensley* determinations regarding "the reasonable number of hours spent on the litigation and a reasonable hourly rate" can be made. *See Hensley*, 461 U.S. at 433, 103 S. Ct. at 1939.

[10]     *See Leroy I*, 831 F.2d at 585-86 (vacating district court judgment and remanding for entry of amended award); *Cobb v. Miller*, 818 F.2d 1227, 1235 (5th Cir. 1987) (reversing district court and rendering judgment on fee award); *see also Home Placement Serv. v. Providence Journal Co.*, 819 F.2d 1199, 1211 (1st Cir. 1987) (opting to modify fee award rather than remand).

discretion and after a careful analysis of the record and the determinations of the district court, we deem appropriate a ten percent reduction for inadequate documentation of the hours and fees requested for 1) February 1986 to July 1987, 2) month-end summary entries by Attorneys Slater and Stevenson during 1987 and 1988, and 3) November and December 1988. As for the request for hours for Attorney Madigan, however, the record is virtually devoid of any information helpful to a determination of whether or how his hours were spent beneficially on this litigation. We accordingly deny any award of attorneys' fees based on the hours submitted for Attorney Madigan.

Fischbach also challenges several entries as too vague to support a determination whether or how they were spent on this litigation. The district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review. *See Leroy v. City of Houston (Leroy II)*, 906 F.2d 1068, 1080 (5th Cir. 1990) (striking hours as "not illuminating as to the subject matter" or "vague as to precisely what was done"); *Leroy I*, 831 F.2d at 585-86 (reversing when district court accepted all hours from records that were "scanty," completely missing, or lacking in explanatory detail); *see also HJ, Inc.*, 925 F.2d at 260 (reducing hours for vague entries such as "legal research," "trial preparation," and "met with client").

After reviewing the instant record, we agree that many entries

in LP&L's time records are indeed scanty as to subject matter.[11] Nonetheless, our case law has not precisely defined the appropriate standard, if in fact it is susceptible of being thus defined. Accordingly, "not illuminating as to the subject matter" or "vague as to precisely what was done" gives the district court sufficient leeway within which to *accept or reject* fee applications similar to that submitted by LP&L. Litigants take their chances when submitting such fee applications, as they provide little information from which to determine the "reasonableness" of the hours expended on tasks vaguely referred to as "pleadings," "documents," or "correspondence" without stating what was done with greater precision. *See Hensley*, 461 U.S. at 434, 103 S. Ct. at

---

[11] LP&L's records contain vague entries such as "revise memorandum," "review pleadings," "review documents," and "correspondence." Specifically, we find the following hours lack the required specificity to support completely the fees requested:

| | |
|---|---|
| Slater: | 290.75 hours, totalling $66,348.75 in fees |
| Stevenson: | 229.25 hours, totalling $47,442.50 |
| O'Keefe: | 19.7 hours, totalling $3622.50 |
| Lewis: | 0.3 hours, totalling $67.50 |
| O'Brien: | 2.8 hours, totalling $490.00 |
| Staub: | 96.0 hours, totalling $16,140.00 |
| Burns: | 6.0 hours, totalling $960.00 |
| Thomas: | 7.0 hours, totalling $980.00 |
| Rodriguez: | 36.0 hours, totalling $5040.00 |
| McGrew: | 1.3 hours, totalling $182.00 |
| Van Horn: | 0.5 hours, totalling $60.00 |
| Chalker: | 32.0 hours, totalling $3840.00 |
| McAlister: | 1.0 hours, totalling $120.00 |
| Schooley: | 52.0 hours, totalling $5200.00 |
| Brown: | 1.75 hours, totalling $175.00 |
| Friend: | 124.04 hours, totalling $12,404.00 |
| Readinger: | 236.25 hours, totalling $11,812.50 |
| Walker: | 42.15 hours, totalling $2107.50 |
| Pate: | 32.25 hours, totalling $1612.50 |
| Hughs: | 61.75 hours, totalling $2778.75 |
| Carrigan: | 5.0 hours, totalling $225.00 |
| Goodwin: | 33.8 hours, totalling $1521.00 |
| Evans: | 9.05 hours, totalling $407.25 |
| Helwig: | 30.75 hours, totalling $1383.75 |
| Gullo: | 0.35 hours, totalling $15.75 |
| Whittington: | 0.5 hours, totalling $22.50 |
| Fleming: | 4.25 hours, totalling $191.25 |

1939 (instructing district court to exclude hours not "reasonably expended").

Viewing the time records as a whole, however, and given the district court's familiarity with this case, including the quality of the attorneys' work over a period of several years, we cannot say that the district court clearly erred in refusing to reduce the hours in question for vagueness. These entries may border on inadequacy as a matter of law, but we are mindful that practical considerations of the daily practice of law in this day and age preclude "writing a book" to describe in excruciating detail the professional services rendered for each hour or fraction of an hour. We also recognize that, in this era of computerized time keeping, many data processing programs limit the amount of input for any given hourly or daily entry. Nevertheless, attorneys who anticipate applying for reimbursement of fees should endeavor to be less terse.

In addition to criticizing LP&L's records as inadequate and vague, Fischbach also complains that the district court failed to exclude hours that LP&L expended litigating against the other defendants. A prevailing litigant may not recover for hours devoted solely to claims against other parties. *See Hensley*, 461 U.S. at 434-35, 103 S. Ct. at 1940 (work on unsuccessful claim not compensable); *Baughman*, 583 F.2d at 1214 (defendant relieved from compensating plaintiff for hours expended litigating against other defendants). But when claims against multiple parties share a "common core of facts" or "related legal theories," a fee applicant

may claim all hours reasonably necessary to litigate those issues. *Hensley*, 461 U.S. at 434-35, 103 S. Ct. at 1940.[12]

Proving an antitrust case involves demonstrating collusion among multiple defendants; this requires the plaintiff to prove the same facts and issues against several parties to recover against any one party. *See* 15 U.S.C. § 2 (1988) (defining violation for persons who "combine or conspire"). We are here satisfied that LP&L's claims against the other defendants involved a common core of facts, and that LP&L was thus entitled to claim the hours it spent litigating against the other defendants. Consequently, we conclude that the district court did not err in refusing to sift through LP&L's hours and eliminate those spent in litigation against the other defendants.[13]

**2**

Next, Fischbach challenges the district court's determination of the hourly rates awarded to LP&L. This too we review for clear

---

[12]     *See also City of Riverside v. Rivera*, 477 U.S. 561, 570, 106 S. Ct. 2686, 2692, 91 L. Ed. 2d. 466 (1986) (finding common core of facts); *Abell v. Potomac Ins. Co.*, 946 F.2d 1160, 1169 (5th Cir. 1991) ("[W]here time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required."), *cert. denied*, ___ U.S. ___, 112 S. Ct. 1944, 118 L. Ed. 2d 549 (1992); *Nash v. Chandler*, 848 F.2d 567, 572 (5th Cir. 1988) (finding no clear error where unsuccessful claims "highly relevant" to successful claim); *Cobb v. Miller*, 818 F.2d 1227, 1233 (5th Cir. 1987) (holding claims against multiple defendants compensable because interrelated).

[13]     When a plaintiff's claims cannot be disentangled, the district court's focus should shift to the results obtained and adjust the lodestar accordingly. *Hensley*, 461 U.S. at 436-37, 103 S. Ct. at 1941 ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."); *HJ, Inc.*, 925 F.2d at 260 (permitting district court to either cut non-successful hours or reduce lodestar to reflect success); *United States Football League v. National Football League*, 887 F.2d 408, 414 (2d Cir. 1989) (holding that district court did not abuse discretion in reducing lodestar rather than cutting nonsuccessful hours), *cert. denied*, 493 U.S. 1071, 110 S. Ct. 1116, 107 L. Ed. 2d 1022 (1990). We address this issue *infra* in section B.

-13-

error. *Powell v. Commissioner*, 891 F.2d 1167, 1173 (5th Cir. 1990) (holding that determination of reasonable rates is question of fact, subject to clear error standard); *Islamic Ctr. v. City of Starkville*, 876 F.2d 465, 468 (5th Cir. 1989) (using clear error standard to evaluate hourly rates awarded). To determine reasonable rates, a court considers the attorneys' regular rates as well as prevailing rates. *HJ, Inc.*, 925 F.2d at 260 (considering regular rates as well as prevailing rates); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 23 (D.C. Cir. 1984) (calling for "reference to the customary billing rate followed by comparison to the prevailing community rate to ensure that the attorney's customary rate is reasonable"), *cert. denied,* 472 U.S. 1021, 105 S. Ct. 3488, 87 L. Ed. 2d 622 (1985). During the latter part of the instant litigation, LP&L's attorneys reduced the hourly rates they charged by 25% in exchange for a contingent share of any eventual recovery. In its fee application, however, LP&L requested its attorneys' usual rate.[14]

> When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable. When the requested rate of compensation exceeds the attorney's usual charge but remains within the customary range in the community, the district court should consider whether the requested rate is reasonable.

*Islamic*, 876 F.2d at 469; *see also Powell*, 891 F.2d at 1175 (holding customary billing rate to be *prima facie* reasonable).

---

[14] LP&L also submitted affidavits from other local attorneys supporting its rate request.

After due consideration, the district court found that LP&L's requested rate was reasonable.

Fischbach argues that LP&L should not recover any amount in excess of the fees actually paid.[15] Otherwise, Fischbach contends, LP&L will receive a windfall. Attorneys' fees awards should not provide a windfall to plaintiffs. *See Hensley*, 461 U.S. at 430 n.4, 103 S. Ct. at 1938 n.4 (explaining statutory goal of avoiding windfalls to attorneys); *see also Riverside*, 477 U.S. at 580, 106 S. Ct. at 2697 ("Congress intended that statutory fee awards be `adequate to attract competent counsel, but . . . not produce windfalls to attorneys.'" (quoting S. Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5913)). Nevertheless, the actual amount paid in fees is not dispositive on the question of reasonable rates. *See Blum v. Stenson*, 465 U.S. 886, 895-96, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984) (determining that courts should use market rates, not cost-based rates); *Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 238 n.6 (5th Cir. 1990) (suggesting that "attorneys' fees awards are not always purely compensatory in nature"); *Brantley v. Surles*, 804 F.2d 321, 327 (5th Cir. 1986) ("That the amount of the fee award exceeds the amount billed by opposing counsel is also not

_____

[15] Fischbach characterizes LP&L's requested rate as an improper "multiplier" or "contingency enhancement." *See Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 731, 107 S. Ct. 3078, 3089, 97 L. Ed. 2d 585 (1987) (holding enhancements generally inappropriate). The enhancements in these cases, however, refer to requests for multipliers *in excess* of a reasonable rate. Therefore, Fischbach's argument is inapplicable to the facts of this case.

-15-

determinative."). In *Blanchard v. Bergeron*,[16] the Supreme Court refused to limit trial judges to the contract between the plaintiff and his counsel. 489 U.S. at 96, 109 S. Ct. at 946. "Should a fee agreement provide less than a reasonable fee . . . , the defendant should nevertheless be required to pay the higher [market-based] amount." *Id.* at 93, 109 S. Ct. at 944.

The issue we review on appeal here is not how much the attorneys charged but whether the fees awarded by the district court are reasonable; if they are reasonable, then by definition there will be no windfall. *Id.* at 96, 109 S. Ct. at 946. Moreover, "[t]he established rates represent the opportunity cost of what the firm turned away in order to take the litigation." *Laffey*, 746 F.2d at 24. Our review of the record reveals that both the rates charged and the rates requested were well within the range of prevailing rates in the community. The district court approved the requested rates, and we find no clear error in this choice.

### B

Fischbach also challenges the district court's adjustment of the lodestar.[17] We review lodestar adjustments for abuse of discretion. *Palmco Corp. v. American Airlines, Inc.*, 983 F.2d 681, 688 (5th Cir. 1993) (reviewing award of attorneys' fees for abuse of discretion). "It remains important, however, for the district court to provide a concise but clear explanation of its reasons for

---

[16] 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989).

[17] The district court reduced the lodestar 15% for overstaffing and made no other adjustments.

the fee award." *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941; *see also Brantley*, 804 F.2d at 325-26 ("Our concern is not that a complete litany be given, but that findings be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation."); *Nisby v. Commissioners Court*, 798 F.2d 134, 137 (5th Cir. 1986) ("When the district court does not explain its reasons for the attorney's fee it awards, we are unable adequately to review the propriety of the fee award."); *Baughman*, 583 F.2d at 1219 (requiring explanation of district court's adjustment of lodestar).

We therefore inspect the district court's lodestar analysis only to determine if the court sufficiently <u>considered</u> the appropriate criteria. Moreover, Fischbach bears the burden of showing that further reduction is warranted. *See USFL*, 887 F.2d at 413 ("[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified.").

Adjustment of the lodestar in this Circuit involves the assessment of a dozen factors. Our opinion in *Johnson v. Georgia Highway Express, Inc.*[18] identifies these factors.[19]

---

[18]    488 F.2d 714 (5th Cir. 1974).

[19]    The factors include: 1) the time and labor required for the litigation; 2) the novelty and complication of the issues; 3) the skill required to properly litigate the issues; 4) whether the attorney had to refuse other work to litigate the case; 5) the attorney's customary fee; 6) whether the fee is fixed or contingent; 7) whether the client or case circumstances imposed any time constraints; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) whether the case was "undesirable;" 11) the type of attorney-client relationship and whether that relationship was long-standing; and 12) awards made in similar cases. 488 F.2d at 717-719.

Primarily, Fischbach contests the district court's refusal to reduce the lodestar to reflect LP&L's "limited success," the eighth of the *Johnson* factors. In considering this factor, the district court ruled:

> The results obtained, though disappointing to plaintiff in quantum, were nonetheless significant. The amount involved, the $15-17 million sought as opposed to $500,000 awarded by the jury is not insignificant for inherent therein is the principle of the matter. . . . [I]t should be remembered that in this instance the plaintiff is entitled to a mandatory fee shifting award, not a discretionary one based on limited success achieved.
>      . . .
>      Significant here is the fact that plaintiff exposed the rapacious avarice of educated executives and professionals. . . . Such conduct cuts the thread of the fabric of our society and consequences invariably get borne by the citizenry. The Court considers exposure of this antitrust violation and racketeering activity to be an important and highly significant result obtained.[20]

Moreover, in commenting on various cases cited by the parties, the district court mentioned with approval language such as "recovery of the[] reasonable attorney's fees must be sustained regardless of the amount of damages awarded."[21]

Fischbach contends that the district court misapplied the law when it refused to reduce the lodestar for LP&L's limited success.

_____

[20]    The district court's implication that, as to the limited success factor, some distinction exists between mandatory and discretionary fee shifting is, at most, unfortunate surplusage; the portion of the court's findings and conclusions that follow demonstrate beyond cavil that the court did indeed "consider" LP&L's degree of success and implicitly explained why there was no additional lodestar reduction on account of it.

[21]    Citing *United States Football League v. National Football League*, 887 F.2d 408 (2d Cir. 1989), *cert. denied*, 493 U.S. 1071, 110 S. Ct. 1116, 107 L. Ed. 2d 1022 (1990). *USFL*, however, does not stand for the proposition that *all* fees requested by a prevailing antitrust plaintiff are reasonable; therefore, the language quoted by the district court does not necessarily support its conclusion.

*See Farrar v. Hobby*, ___ U.S. ___, ___, 113 S. Ct. 566, 574, 121 L. Ed. 2d 494 (1992) (calling the degree of success the most crucial element in determining the amount of a reasonable fee); *Hensley*, 461 U.S. at 440, 103 S. Ct. at 1943 ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.").

But it is one thing to *consider* a factor (which is required) and quite another to *act* upon it (which is discretionary with the district court). In his partial dissent, Judge Garza makes the unqualified statement that the district court "did not even *consider* the magnitude of LP&L's success"SQa statement that is puzzling in light of the portion of the district court's opinion that is quoted in the text accompanying note 20 *supra*. When that court's analysis and pronouncements are read in the context of the deferential abuse-of-discretion standard that we must apply when reviewing this issue, we cannot help but disagree with Judge Garza's statement. Not only did the district court expressly advert to the magnitude of LP&L's recovery, reciting the quantums of both the demand and the recovery; that court expressly "considered" the significance of the countervailing, non-pecuniary aspects of LP&L's victory, and also explained, at least implicitly, why it made no additional reduction to the lodestar. If, in its discretion, the district court had made a reasonable reduction of the lodestar for limited success, we undoubtedly would have affirmed that decision as being a proper exercise of discretion: As we and Judge Garza note, such a reduction is "appropriate" under

-19-

*Hensley*. But "appropriate" is not synonymous with "required." Inasmuch as the district court here clearly did consider limited success *and* explain its reasons for not further reducing the lodestar therefor, that court cannot be said to have abused its discretion for failure to reduce the lodestar on the basis of that considered factor.

We acknowledge at the outset that, to a degree, the district court's ruling appears to confuse determination of the *right* to recover fees with determination of the *reasonable amount* of that fee. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793, 109 S. Ct. 1486, 1494, 103 L. Ed. 2d 866 (1989) ("[T]he degree of the plaintiff's overall success goes to the reasonableness of the award . . . , not to the availability of a fee award *vel non*."); *Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs*, 991 F.2d 163, 166 (5th Cir. 1993) (applying "limited success" analysis to mandatory fee shifting statute);[22] *see also George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1536 (D.C. Cir. 1992) (holding that *Hensley* standard regarding amount of reasonable fee applies to all fee shifting statutes, including mandatory ones).[23]

---

[22] The statute at issue in *Ingalls* was the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901-950 (1988). Like the Clayton Act, *see* 15 U.S.C. § 15 (1988), the LHWCA provides that a successful plaintiff "*shall* be awarded a reasonable attorney's fee . . . ." 33 U.S.C. § 928(a) (1988) (emphasis added).

[23] Neither case cited by the district court mandates an opposite conclusion. *Sciambra v. Graham News*, 892 F.2d 411 (5th Cir. 1990), only discussed the right to fees, not the amount thereof. Indeed, *Sciambra* explicitly declined to address a "limited success" argument because it was not timely made. *Id.* at 417. *United States Football League v. National Football League*, 887 F.2d 408 (2d Cir. 1989), *cert. denied*, 493 U.S. 1071, 110 S. Ct. 1116, 107 L. Ed. 2d

Although the district court found that LP&L's limited victory was "an important and highly significant result obtained," the Supreme Court has held that a finding of significant result alone does not satisfy the district court's duty to evaluate the magnitude of that result.

> We are unable to affirm the decisions below, however, because the District Court's opinion did not properly *consider* the relationship between the extent of success and the amount of the fee award. The court's finding that `the [significant] extent of the relief clearly justifies the award of a reasonable attorney's fee' does not answer the question of what is `reasonable' in light of that level of success. We emphasize that the inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is *appropriate* if the relief, however, significant, is limited in comparison to the scope of the litigation as a whole.

*Hensley*, 461 U.S. at 438-39, 103 S. Ct. at 1942-43 (emphasis added); *see also Blum*, 465 U.S. at 900, 104 S. Ct. at 1549 (criticizing fee award because although the award "was based in part on the District Court's determination that the ultimate outcome of the litigation `was of great benefit to a large class of needy people,'" the district court "did not explain . . . exactly how this determination affected the fee award"). In that respect, the district court's finding here appears to fall a bit short of the required analysis. The court's analysis also appears to fall

1022 (1990), does state that the nominal damages received "does not affect the entitlement to an award," but it also states that limited results "<u>may</u> be <u>a</u> factor used in reducing a fee award." (emphasis added).

LP&L also urges us to affirm the district court's award because a fee award need not be proportional to the damages to be reasonable. *See Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir. 1993) ("[T]he disparity of these amounts . . . alone will not support a reversal . . . ."). The issue here, however, is not whether the award should be reversed because it is *disproportional*, but whether it is *reasonable* in light of <u>all</u> factors, one of which is the degree of success obtained.

short in another respect: LP&L failed to recover at all from several defendants; and if the district court considered this facet of this shortfall in LP&L's success, it did not clearly indicate that it did so. *See supra* n.15. Nevertheless, we are not prepared to find that the district court failed to *consider* LP&L's relatively limited success; neither are we prepared to hold that the court abused its discretion in refusing to reduce LP&L's lodestar further to reflect less than total success, either monetarily or against all defendants. We find important the fact that degree of success is but one of 12 *Johnson* factors, and that in our deferential testing of the discretion of the court we look only to *consideration* of that factor without requiring that a reduction in lodestar necessarily follow. We, therefore affirm the district court's handling of limited success and its effectSQor lack thereofSQon the lodestar factor in this case.

Fischbach also asserts generally that the district court failed to consider sufficiently other *Johnson* factors. A district court's *Johnson* analysis, however, need not be meticulously detailed to survive appellate review: "If the district court has articulated and clearly applied the criteria . . . , we will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." *Blanchard*, 893 F.2d at 89; *see also Longden v. Sunderman*, 979 F.2d 1095, 1100 (5th Cir. 1992) (finding no abuse when district court discussed each factor); *Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir. 1987)

-22-

(refusing to reverse award when, although district court did not analyze every *Johnson* factor, the "district court has utilized the Johnson framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation"). As in the instance of the limited success factor, the district court did not abuse its discretion when it refused to reduce the lodestar further on the basis of its consideration of the other *Johnson* factors.

## C

Fischbach next contends that the district court should have awarded postjudgment interest only from the date of the order quantifying the fee award, rather than from the date of the underlying judgment. 28 U.S.C. § 1961 (1988) provides that postjudgment "interest shall be calculated from the date of the entry of the judgment . . . ." The question here is whether the judgment on the merits or the supplemental judgment verifying the fee award should be used. In *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir. 1983) (en banc), we stated:

> The relevant judgment for purposes of determining when interest begins to run is the judgment establishing the right to fees or costs, as the case may be. . . . If, as in the usual course, the amount of costs is later determined by the clerk, interest will nonetheless run from the date of the judgment allowing costs either expressly or by legal implication. If a judgment is rendered that does not mention the right to attorneys' fees, and the prevailing party is unconditionally entitled to such fees by statutory right, interest will accrue from the date of judgment.

*Id.* at 544-45.[24]

In *Kaiser Aluminum & Chemical Corp. v. Bonjorno*,[25] the Supreme Court refused to calculate interest from the date of an original judgment that was invalidated because it was not supported by the evidence. 494 U.S. at 835-36, 110 S. Ct. at 1576. "Where the judgment on damages was not supported by the evidence, the damages have not been `ascertained' in any meaningful way." *Id.* Fischbach contends that, because attorneys' fees are not quantified at the time of the judgment on the merits, *Kaiser* must have overruled *Copper Liquor*. Since *Kaiser*, three Circuits have addressed this issue. The Seventh and Tenth Circuits held that *Kaiser* does supersede *Copper Liquor*.[26] The Eighth Circuit disagreed,[27] deciding that *Kaiser* did not squarely address the issue in *Copper Liquor*. *Jenkins*, 931 F.2d at 1276 n.3. We agree with the Eighth Circuit. Because the earlier judgment in *Kaiser* was invalid, the party had no entitlement to damages on that date. Thus, the reasoning in *Kaiser* is consistent with *Copper Liquor*'s mandate that interest should not accrue until the party becomes entitled to the award.

---

[24] Because LP&L recovered under a mandatory fee shifting statute, it became entitled to fees on the date of judgment on the merits.

[25] 494 U.S. 827, 110 S. Ct. 1570, 108 L. Ed. 2d 842 (1990).

[26] *Midamerica Fed. Sav. & Loan Ass'n v. Shearson/American Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir. 1992) (stating that "[k]ey to the *Kaiser* holding is the date damages are `ascertained' in a meaningful way"); *Fleming v. County of Kane*, 898 F.2d 553 (7th Cir. 1990) (awarding interest from date of award of fees).

[27] *Jenkins v. Missouri*, 931 F.2d 1273, 1276-77 (8th Cir.) (adopting *Copper Liquor* rule), *cert. denied*, ___ U.S. ___, 112 S. Ct. 338, 116 L. Ed. 2d 278 (1991).

Indeed, *Copper Liquor* and *Kaiser* are consistent in that in neither case does interest accrue for amounts later reversed. *See Copper Liquor*, 701 F.2d at 545 ("If a judgment for attorneys' fees is later modified by the district court or an appellate court, whether the award is increased or reduced, interest on the revised award will run from the date of the original judgment unless, of course, the allowance of any amount is reversed."). We therefore hold that *Kaiser* did not overrule *Copper Liquor*, so that the district court here did not err in awarding postjudgment interest from the date of the judgment on the merits.

### D

In its final challenge, Fischbach contests the award of $45,330.96 in fees for LP&L's experts' response to discovery. Ordinarily, recovery of expert fees is limited to the statutory amounts authorized under 28 U.S.C. §§ 1821 and 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439, 107 S. Ct. 2494, 2496, 96 L. Ed. 2d 385 (1987) ("[W]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary."); *see also West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, ___, 111 S. Ct. 1138, 1140-41, 113 L. Ed. 2d 68 (1991) (limiting witness fees to statutory amounts, absent express statutory authority).

Rule 26(b)(4)(c), however, provides an independent basis for recovery of expert fees as part of discovery. *See* Fed. R. Civ. P.

26 (b)(4)(C);[28] *see also Chambers v. Ingram*, 858 F.2d 351, 361 (7th Cir. 1988) (affirming award of Rule 26(b)(4)(C) costs as separate from § 1821 witness fees). Accordingly, the district court correctly granted LP&L's request for Rule 26(b)(4)(C) costs.

But Rule 26(b)(4)(C) applies to both parties, not just to the prevailing party. The district court should also have awarded Rule 26(b)(4)(C) costs to Fischbach. The court considered this argument but found the issue moot, concluding that, even if Fischbach was entitled to these costs, LP&L could have recovered them under the fee shifting provisions of the antitrust laws. *See* 15 U.S.C. § 15 (1988) (allowing recovery of cost of suit). We disagree. Previously, we have allowed a prevailing antitrust plaintiff to recover all expenses of the litigation. *See, e.g., Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1100 (5th Cir. 1982) (holding that "the Clayton Act embraces all the ordinary and reasonable expenses of litigation"), *modified on other grounds on appeal after remand*, 701 F.2d 542 (5th Cir. 1983). In *West Virginia University Hospitals, Inc. v. Casey*,[29] however, the Supreme Court ruled that a prevailing plaintiff cannot recover expert fees under a fee shifting statute unless the statute expressly provides for the recovery of expert fees. 499 U.S. at ___, 111 S. Ct. at 1141-43 (absent specific statutory authorization, shifting of

---

[28]    Rule 26(b)(4)(C) provides:
[T]he court shall require that the party seeking discovery shall pay the expert a reasonable fee for time spent in responding to discovery . . . .
Fed. R. Civ. P. 26(b)(4)(C).

[29]    499 U.S. 83, 111 S. Ct. 1138, 113 L. Ed. 2d 68 (1991).

attorneys' fees does not include expert witness fees).  We therefore conclude that expert fees are Rule 26(b)(4)(C) costs and are not recoverable under *Casey*.  Consequently, we reverse the district court's denial of Fischbach's entitlement to recover Rule 26(b)(4)(C) costs.  And, as Fischbach documented its costs and LP&L did not refute the quantum, we render judgment in favor of Fischbach and against LP&L in the requested amount of $10,994.21 for Fischbach's expert witness expenses.

**The Comstock Appeal:**

Comstock challenges several elements of the district court's final award of costs and fees.  First, it contests the denial of Rule 68 fees.  Second, Comstock disputes the final assessment of certain elements of the taxation of costs.  Last, it insists that the district court neglected to award fees and costs that Comstock incurred in connection with the instant fee and costs portion of the suit.

**A**

Comstock argues that the district court erred in ruling that it should not recover fees and costs from LP&L under Rule 68 of the Federal Rules of Civil Procedure.  Interpretation of Rule 68 is an issue of law which we review *de novo*.  *Knight v. Snap-On Tools Corp.*, 3 F.3d 1398, 1404 (10th Cir. 1993); *Erdman v. Cochise County*, 926 F.2d 877, 879 (9th Cir. 1991).  Rule 68 states:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party.... If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then

> file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment.... If the judgment finally obtained by the offeree is not more favorable than the offer the offeree must pay the costs incurred after the making of the offer....

Fed. R. Civ. P. 68.

The purpose of Rule 68 is to encourage the settlement of litigation by providing an incentive to settle "in those cases in which there is a strong probability that the plaintiff will obtain a judgment but the amount of the recovery is uncertain." *Delta Airlines, Inc. v. August*, 450 U.S. 346, 352, 101 S. Ct. 1146, 1150, 67 L. Ed. 2d 287 (1981). Rule 68 requires a prevailing plaintiff to pay the costs of litigation "in the single circumstance where the plaintiff does not accept the defendant's offer of judgment which is more favorable than the judgment the plaintiff ultimately obtains." *Johnston v. Penrod Drilling Co.*, 803 F.2d 867, 869 (5th Cir. 1986). Consequently, when a plaintiff rejects a Rule 68 offer of judgment, "he will lose some of the benefits of victory if his recovery is less than the offer." *Delta*, 450 U.S. at 352, 101 S. Ct. at 1150.

If a plaintiff takes nothing, however, Rule 68 does not apply. In *Delta Airlines, Inc. v. August*,[30] the Supreme Court limited Rule 68 to cases in which a plaintiff obtains a judgment against the defendant; the rule is not applicable when a defendant actually prevails over the plaintiff. *See* 450 U.S. at 351-52, 101 S. Ct. at 1149-50 (finding Rule 68 "simply inapplicable to this case because

---

[30]     450 U.S. 346, 101 S. Ct. 1146, 67 L. Ed. 2d 287 (1981).

-28-

it was the defendant that obtained the judgment"); *see also Landon v. Hunt*, 938 F.2d 450, 452 n.1 (3d Cir. 1991) (commenting that defendant could not recover under Rule 68 when plaintiff's claim was dismissed); *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982) (refusing Rule 68 costs to a defendant who prevailed). The Court noted that costs are usually assessed against a losing plaintiff as a normal incident of defeat but that this exception is created so that "a nonsettling plaintiff does not run the risk of suffering additional burdens that do not ordinarily attend to a defeat . . . ." 450 U.S. at 352, 101 S. Ct. at 1150.

Comstock contends that it should recover Rule 68 costs because, instead of a take nothing judgment, LP&L recovered $500,000. Comstock argues that *Delta* is inapplicable because LP&L was not defeated, and it should lose some of the "benefits of victory" for failing to accept Comstock's reasonable offer of judgment.

Here, plaintiff LP&L's recovery was against other defendants, however; plaintiff LP&L took nothing against defendant Comstock. In other words, defendant Comstock actually prevailed totally against plaintiff LP&L. Comstock has not presented any argument that would compel a Rule 68 comparison of its offer of judgment to LP&L and the judgment that LP&L obtained against other defendants. Rule 68 operates by comparing two clearly defined amounts. *Johnston*, 803 F.2d at 870. This comparison is of the "money or property," including "costs then accrued," set out in the offer and the "judgment finally obtained by the offeree." Fed. R. Civ. P.

68.  Accordingly, Rule 68 compares the amount of an offer of judgment, whether made by one defendant or jointly made by multiple defendants,[31] and the amount of the judgment, if any, taken by the offeree against the offeror or offerors.  If no judgment is taken by the offeree plaintiff against the offeror defendant or joint offeror defendants, the *Delta* rule applies.

Comstock made an offer of judgment to LP&L, and LP&L took nothing against Comstock.  LP&L's recovery against other non-offeror defendantsSQnone of which were joint offerors with ComstockSQis irrelevant to the Rule 68 inquiry.  Consequently, Comstock cannot recover its fees under Rule 68.[32]

**B**

Additionally, Comstock challenges the district court's approval of the clerk of court's final taxation of costs against LP&L, arguing that the clerk erroneously struck certain items.  We will not overturn the district court's taxation of costs absent a clear abuse of discretion.  *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1551 (5th Cir. 1984); *Studiengesellschaft Kohle mbh v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir. 1983).  Although Rule 54(d) of the Federal Rules of

---

[31]  We have previously encountered the question whether recovery against one defendant may apply to a Rule 68 determination with respect to another defendant-offeror. In *Johnston v. Penrod Drilling Co.*, 803 F.2d 867, 870 (5th Cir. 1986), two defendants made an unapportioned joint offer of judgment to the plaintiff. We vacated the district court's decision because it had not included the settlement against the first defendant in the Rule 68 calculation for the second defendant. *Johnston* is distinguishable, however, because the settlement was made with a joint *offeror*, not with an unrelated defendant.

[32]  Comstock also appealed the district court's finding that its Rule 68 offer of judgment was not timely.  Our decision regarding the applicability of *Delta* renders that issue moot.

Civil Procedure directs a district court to award costs to a prevailing party,[33] that court cannot award any costs not authorized by statute. "[E]xpenditures for those categories of expenses listed in 28 U.S.C. § 1920 may be recovered only if they are allowed by that section." *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1101 (5th Cir. 1982). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
> . . .
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> . . . .

28 U.S.C. § 1920 (1988). Moreover, "[i]tems proposed by winning parties as costs should always be given careful scrutiny." *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S. Ct. 411, 416, 13 L. Ed. 2d 248 (1964).

Comstock first contends that the district court erred when it refused to allow witness fees for each day that two of its experts attended the trial.[34] It is true that a party may recover witness fees not only for days on which the witness testified, but also for days spent attending the trial beforehand. *See Nissho-Iwai*, 729

---

[33] Rule 54(d) provides:
Except when express provision therefor is made either in a statue of the United States or in these rules, costs other than attorneys' fees shall be allowed to the prevailing party unless the court otherwise directs . . . .
Fed. R. Civ. P. 54(d).

[34] Comstock's experts, David Pike and E.J. Janik, attended 38 and 11 days of trial, respectively. Pike testified on three days, and Janik testified on one day. The district court actually granted five days for Pike and three days for Janik. This equated to the number of days spent testifying plus travel before and after.

F.2d at 1552-53 (allowing fees for days prior to witnesses' testimony). Fees for these preliminary days are limited, however, to days that witnesses spend holding themselves available to testify. *See Hurtado v. United States*, 410 U.S. 578, 584, 93 S. Ct. 1157, 1161, 35 L. Ed. 2d 508 (1973) (allowing fees for days spent "in readiness to testify"); *Nissho-Iwai*, 729 F.2d at 1552 (granting fees for days witness expected to, but did not actually, testify). The district court approved its clerk's determination that only a portion of the days Pike and Janik attended the trial were expended in the expectation that they would testify on those days. We find no abuse of discretion in this decision.

Comstock next insists that the district court should have allowed recovery of the costs of defendants' trial exhibits. A district court may authorize the production of trial exhibits if so doing would "facilitate the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(16); *see also Johns-Manville Corp. v. Cement Asbestos Prods. Co.*, 428 F.2d 1381, 1385 (5th Cir. 1970) (looking to Rule 16 for pretrial authorization of models and charts). Absent pretrial approval of the exhibits, however, a party may not later request taxation of the production costs to its opponent. *Johns-Manville*, 428 F.2d at 1385; *see also Studiengesellschaft*, 713 F.2d at 133 (reversing award of exhibit costs where party had not obtained pretrial authorization). Comstock asserts that the pretrial order authorized the production of its exhibits by requiring exhibits to be "exchanged prior to trial in accordance with this order." We find no such

authorization in this language: Requiring the exchange of exhibits prior to trial does not imply authorization of production of those exhibits. Accordingly, the district court did not err in denying recovery by Comstock of the costs of its exhibits.

Comstock also challenges the district court's affirmance of the clerk of court's valuation of Comstock's allowable photocopying charges. On this claim Comstock presents virtually no legal argument; instead, it simply alleges conclusionally that both the clerk and the district court abused their discretion. After reviewing the record, we find that the clerk of court carefully assessed each item in the request. Consequently, we find no abuse of discretion by either the clerk or the district court.

And, like Fischbach, Comstock challenges the district court's simultaneous award of Rule 26(b)(4)(C) costs to LP&L and denial of the same costs to Comstock. It submitted requests for its share of such cost in the sum of $7,254.98; and although LP&L contests the timeliness of Comstock's request and complains in a conclusionary manner that Comstock overstated its claim and failed to offer evidence of its method of calculation, the dollar amount itself is not truly disputed. We have already discussed Rule 26(b)(4)(C) in our review of Fischbach's appeal,[35] and that analysis applies here as well. Comstock is thus entitled to these costs in the amount requested.

LP&L responds that, even if Comstock is allowed recovery of Rule 26(b)(4)(C) costs, its request for these costs was not timely

---

[35] *See supra* Part II (Fischbach Appeal), D.

under Local Rule 5.04E.[36] Comstock timely filed its original application for taxation of costs, but did not add its request for Rule 26 costs until nine months later. Although Local Rule 5.04E imposes a thirty day limit on cost applications and supporting memoranda, this rule specifically refers to costs recoverable by "the party in whose favor judgment is rendered." Fed. Local Ct. Rules, E.D. La., Rule 5.04E. We have already noted that Rule 26(b)(4)(C) costs are not limited to prevailing parties; and we hold that Rule 26(b)(4)(C) fees do not fall within the kinds of costs covered by Local Rule 5.04E. *See also Chambers*, 858 F.2d at 360-61 ("The advisory committee notes to Rule 26(b)(4)(C) state that the court may issue an order to pay fees as a condition to discovery `or it may delay the order until after discovery.'" (quoting Fed. R. Civ. P. 26(b)(4)(C))). Accordingly, we hold that the district court improperly denied Comstock's Rule 26(b)(4)(C) request and render judgment in favor of Comstock and against LP&L in the sum of $7,254.98 to cover those items.[37]

## C

Comstock's last contention is that the district court erred

---

[36] Local Rule 5.04E provides:
Within thirty days after receiving notice of entry of judgment, unless otherwise ordered by the court, the party in whose favor judgment is rendered and who claims and is allowed costs, shall . . . file with the Clerk a notice of application to have the costs taxed . . . .
Fed. Local Ct. Rules, E.D. La., Rule 5.04E.

[37] We do not mean to imply that, under all circumstances, a party may file a request for Rule 26(b)(4)(C) costs nine months after judgment on the merits. The record reflects multiple changes and disputes about the fees extending over a period of many months. Accordingly, we merely hold that on the specific facts of this case, Comstock may recover its Rule 26(b)(4)(C) costs.

when it refused to award costs and fees to Comstock for pursuing its cost application. A district court may award costs and fees for time spent litigating a cost or fee request. *See Alberti v. Klevenhagen*, 896 F.2d 927, 937-38 (5th Cir.) (affirming taxation of costs for expenses solely related to fee litigation), *vacated on other grounds*, 903 F.2d 352 (5th Cir. 1990). We shall not, however, disturb a district court's decision regarding fees for cost recovery litigation absent an abuse of discretion. *See id.; see also Chemical Mfrs. Ass'n v. U.S.E.P.A.*, 885 F.2d 1276, 1283 (5th Cir. 1989) (approving compensation for time spent on fee application because amount was within district court's discretion); *Spray-Rite Serv. Co. v. Monsanto Co.*, 684 F.2d 1226, 1250 (5th Cir. 1982) (affirming district court's discretion in awarding fees and costs for time spent litigating its right to fees). Comstock recovered only part of the costs and fees it requested. In challenging Comstock's request, LP&L too was only partially successful. Refusing to tax fees and costs for the instant cost litigation fell well within the district court's proper exercise of its discretion.

### III

For the foregoing reasons, we affirm the district court's determination of LP&L's reasonable hourly rates for its attorneys, but we modify the district court's determination of LP&L's reasonable hours, reducing by 10% the specific portions of those fees challenged by Fischbach as inadequately detailed, and eliminating entirely the portion of the district court's award that

allowed $6,465.00 in fees for Attorney Madigan. We also affirm the district court's (1) 15% overstaffing reduction of LP&L's lodestar amount; (2) award of postjudgment interest from the date of the judgment on the merits; (3) award to LP&L of costs (including Rule 26(b)(4)(C) costs, other expenses, and fees for other attorneys). Further, we affirm the district court's award of attorneys' fees to Comstock and its denial of Rule 68 costs to Comstock, and we affirm the quantum of the district court's costs taxation to Comstock; but we reverse the district court's denial of Rule 26 (b)(4)(C) costs to Fischbach and to Comstock, and render judgment therefor against LP&L and in favor of Comstock in the amount of $7,254.98, and in favor of Fischbach in the amount of $10,994.21.

As modified, the award to LP&L against Fischbach is as follows:

| | |
|---|---:|
| Original fee request: | $ 4,327,276.30 |
| 10% reduction - inadequate documentation:[38] | (35,206.50) |
| Fees disallowed for Attorney Madigan | (6,465.00) |
| Lodestar | $ 4,285,604.80 |
| 15% reduction - overstaffing:[39] | (642,840.72) |
| Reasonable Attorneys Fees: | $ 3,642,764.08 |
| Costs | $ 172,246.61 |
| Other expenses | 322,876.90 |
| Fees for other attorneys | 9,585.36 |

---

[38]Percentage reduction applicable to (1) $115,070 reflected in quarterly summaries for period from February 1986 to July 1987; (2) $154,080 reflected in month-end summaries for two attorneys during 1987 and 1988; and (3) $82,915 for charges in November and December 1988, for which no time records were submitted, totaling in the aggregate $352,065.00.

[39]This reduction was imposed by the district court.

```
GROSS AWARD:                                    $  4,147,472.95

LESS:  Rule 26 costs from LP&L to Fischbach          (10,994.21)

Net Award:   LP&L against Fischbach             $  4,136,478.74
```

In conclusion we hereby enter judgment in the net sum of $4,136,478.74, plus postjudgment interest, against Fischbach and in favor of LP&L; and we increase the district court's judgment against LP&L and in favor of Comstock by $7,254.98 for its Rule 26 costs.

AFFIRMED in part; MODIFIED and, as modified, AFFIRMED in part; and REVERSED and RENDERED in part.

EMILIO M. GARZA, Circuit Judge, concurring in part, and dissenting in part:

I concur in the above opinion with the exception of Part II.B. In my view, the district court applied the wrong legal standard and abused its discretion in refusing to adjust the lodestar for LP&L's limited success. The district court stated that "recovery of the[] reasonable attorney's fees must be sustained regardless of the amount of damages awarded," and explained that cases such as *Farrar v. Hobby*, ___ U.S. ___, ___, 113 S. Ct. 566, 574, 121 L. Ed. 2d 494 (1992) (calling the degree of success the most crucial element in determining the amount of a reasonable fee), and *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S. Ct. 1933, 1943, 76 L. Ed. 2d 40 (1983) ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the

litigation as a whole."), did not apply to mandatory fee statutes.[1] Accordingly, the district court did not even *consider* the magnitude of LP&L's success.[2] The Supreme Court explicitly has dictated otherwise: *Farrar* and *Hensley* apply to all cases.[3] Because the district court failed to apply the correct legal standard, I would reverse. Moreover, in my view, a recovery of less than five percent of the damages requested and against only two of twelve defendants warrants some reduction of fees. For these reasons, I would hold that the district court abused its discretion in refusing to reduce the lodestar, and either remand to the district court to apply the proper standard and to determine what percentage reduction, if any, is warranted by the record's demonstration of LP&L's limited success, or, alternatively, reduce the lodestar by an additional twenty percent. Because the per curiam opinion affirms the district court's ruling on this point, I respectfully dissent.

---

[1] *See supra*, per curiam opinion, text accompanying note 21.

[2] The majority finds this statement "puzzling" and suggests that the district court did consider the magnitude of LP&L's success. The district court, however, only "considered" LP&L's limited success as a threshold question, that is, whether a mandatory fee statute permits *any* consideration of limited success. Because the district court answered this question "no," it never reached the question of whether to "act on [the limited success]." It is the failure to reach this secondary question which I challenge and to which I refer here.

[3] See *supra* per curiam opinion, text accompanying notes 22-23, explaining that the district court's ruling confuses the *right* to recover fees with the determination of the *amount* of that fee, and that a finding of significant result alone does not satisfy the district court's duty to evaluate the magnitude of that result. As in *Hensley*, the district court's finding that LP&L's success was significant "does not answer the question of what is `reasonable' in light of that level of success." 461 U.S. at 439, 103 S. Ct. at 1942.