**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 98-20692**

---

**BARBARA COLEMAN,**

**Plaintiff-Appellee,**

**VERSUS**

**HOUSTON INDEPENDENT SCHOOL DISTRICT;**
**ANDRE HORNSBY; ANITA ELLIS; and PARLEE CRAWFORD,**

**Defendants-Appellants.**

---

Appeal from the United States District Court
for the Southern District of Texas
(H-95-CV-3942)

---

November 8, 1999

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:[*]

Defendants appeal from the district court's order granting attorney fees in the amount of $107,000 and costs in the amount of $4,947.43. We vacate the district court's order granting attorney fees and render judgment reducing the amount of the fee award.

## I. BACKGROUND

Houston Independent School District teacher Barbara Coleman sued HISD, district superintendent Andre Hornsby, Ryan Middle School principal Anita Ellis, and Jones High School principal

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Parlee Crawford, alleging that she was denied a position as an assistant principal at both Ryan Middle School and Jones High School because she is white, in violation of the Equal Protection Clause and 42 U.S.C. §§ 1981, 1983 and 1985. Coleman's theory of the case was that HISD was exercising a racial preference in favor of Hispanic administrators.

Coleman's complaint identified two separate incidents of intentional discrimination; she named HISD, Hornsby, and Ellis with respect to the district's failure to give her a position as the assistant principal of Ryan Middle School, and named HISD, Hornsby, and Crawford with respect to the district's failure to give her a position as an assistant principal at Jones High School. After substantial discovery and several motions hearings, defendant Crawford was granted qualified immunity. Defendant Hornsby was also granted qualified immunity, but only as to Coleman's claims that she was denied an assistant principal position at Jones High School. Defendants Hornsby and Ellis were denied qualified immunity with respect to Coleman's claims that she was denied a position at Ryan Middle School.

Defendant Ellis, but not Hornsby, appealed the district court's denial of qualified immunity to this Court, which resulted in a published opinion reversing the district court's denial of qualified immunity on narrow legal grounds. *See* ***Coleman v. City of Houston***, 113 F.3d 528, 534-35 (5th Cir. 1997). We did not, however, render judgment granting Ellis qualified immunity. To the contrary, the Court expressly left open the question of whether

2

other grounds might exist for denying qualified immunity on remand. *Id.* The district court did not dismiss the claims against Ellis on remand, and those claims remained in the suit, along with Coleman's claims against HISD and Coleman's claims that Hornsby discriminated against her with respect to an assistant principal position at Ryan Middle School.

Coleman then settled the case. The settlement afforded Coleman: (1) a permanent administrative position as an assistant principal; (2) an administrator's contract that would qualify her for further promotions; and (3) compensation in the form of back pay for the time period during which she was denied a promotion. The settlement did not otherwise provide for the recovery of compensatory or punitive damages.

The parties were unable to agree on the amount of attorney fees that Coleman was entitled to recover as the "prevailing party," *see* 42 U.S.C. § 1988, and Coleman filed a petition for fees and costs in the district court in March 1998. At that time, the case had been pending for almost three years. Coleman requested $159,597.75 in attorney and support staff fees and $4,947.43 in costs.[2]

Coleman's request included attorney fees in the amount of

---

[2] Coleman's initial fee request actually requested $107,131 in attorney fees, to be enhanced by a 1.5 multiplier for a total of $160,696.50 in attorney fees. The figures in the original petition were based upon an erroneous calculation of the total number of hours set forth in the supporting documentation. Coleman later submitted a page correcting the number of hours and total amount of billed fees to $ 106,398.59. Coleman did not, however, correct the total request to reflect the lower figure of $159,597.75 after the multiplier was applied.

$85,962.50, including $73,062.50 for the services of partners Stuart and Carol Nelkin (calculated as 208.75 hours at $350.00/hour), $9,350 for the services of first-year associate Kenneth Krock (calculated as 46.75 hours at $200.00/hour), and $3,550 for the services of an unidentified associate, "MFH" (calculated as 17.75 hours at $200.00/hour). Coleman also requested $19,900 for the work of four para-professionals, including $12,700 for work done by law clerk Kenneth Krock before he passed the bar exam (calculated as 158.75 hours at $80.00/hour), $5,500 for the work of paralegal "EBB" (calculated as 68.75 hours at $80.00), $960 for the work of paralegal "WSL" (calculated as 12 hours at $80.00/hour), and $740 for the work of paralegal "CLC" (calculated as 9.25 hours at $80.00). As a final element, Coleman requested $536 for the overtime services of certain clerical staff. Coleman also argued that applicable precedent justified application of a 1.5 multiplier as an enhancement to the requested lodestar amount of $106,398.50, for a total fee request of $159,597.75, plus the $4,947.43 in costs and expenses.

The defendants responded with lengthy and specific objections to the fee petition. With respect to the number of hours reasonably expended, the defendants argued that the district court should exclude from any fee award: (1) hours expended on, or with certain limited exceptions, during the prior Fifth Circuit appeal; (2) duplicative hours billed by a law clerk for attending, rather than conducting or participating in, depositions; (3) duplicative hours billed by Stuart Nelkin for certain client communications;

4

(4) unnecessary hours spent discussing unrelated or tangentially related issues with the Texas Comptroller or the press; (5) unnecessary hours billed for "legal research" before the first pretrial conference; (6) excessive hours billed as client communications; (7) unjustified separate billings for clerical staff overtime; and (8) several hours billed by paralegal staff at $80.00/hour for "filing documents." With respect to the reasonable hourly rate for participating attorneys, the defendants argued that the Nelkins' $350.00/hour rate was excessive, even for well-qualified lawyers experienced in the civil rights area. The defendants further argued that the $200.00/hour rate billed by the newly-graduated, first-year associate Kenneth Krock and the unidentified "MFH" was excessive.

Following a brief contested hearing on the matter, the district court awarded Coleman $107,000 in attorney and support staff fees and $4,947.43 in costs. The district court's award of attorney fees approximated the total number of hours requested at the hourly rates submitted,[3] but reduced Coleman's $159,597.75 request by refusing to allow the requested 1.5 multiplier.

HISD and the individual defendants appeal. The defendants concede Coleman is entitled to recover some attorney fees, but argue by way of various categorical and specific challenges that

---

[3] Coleman's corrected request, excluding any multiplier, was in the amount of $106,398.50, plus $4,947.43 in costs, for a total of $111,345.93. The record does not reflect, either in the relevant pleadings or in the transcript of the hearing on attorney fees, how the district court reached the final award figure of $107,000 plus costs.

5

the award of attorney and support staff fees should be reduced to $20,959.50. Defendants make no challenge to the amount of costs awarded, and Coleman has not cross-appealed the district court's refusal to apply a 1.5 multiplier to enhance the amount of billed fees. Having reviewed Coleman's fee petition in light of the record and the applicable precedent, we conclude that the district court either ignored or failed to adequately address certain merit-worthy objections raised by the defendants when making the award of attorney fees. We therefore vacate the district court's order granting Coleman $107,000 in attorney fees plus $4,947.43 in costs and render judgment reducing the award of fees as set forth in this opinion.

## II. APPLICABLE LEGAL PRINCIPLES

This Circuit has defined a two-step process for determining "reasonable" attorney fees pursuant to 42 U.S.C. § 1988. First, the district court must calculate a lodestar fee, which is the product of the number of hours reasonably expended on the case and the hourly rate that is reasonable for the participating lawyers. *See Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998). The lodestar determination is not mechanistic, and the district court's determination of the lodestar amount should not be guided solely by the billing records or the rates requested in the fee petition. *See, e.g., Hensley v. Eckerhart,* 103 S. Ct. 1933, 1939-40 (1983); *Abrams v. Baylor College of Medicine,* 805 F.2d 528, 536 (5th Cir. 1986). Rather, the district court is required to

6

identify from the fee petition those hours that were "reasonably" expended on the litigation. When making that determination, the district court is obligated to scrutinize the billing records carefully and to exclude excessive, duplicative, or otherwise unnecessary entries. *See* **City of Riverside v. Rivera**, 106 S. Ct. 2686, 2691 (1986); **Hensley**, 103 S. Ct. at 1939; **Abrams**, 805 F.2d at 536. The district court should also consider whether the work performed was "'legal work in the strict sense,' or was merely clerical work that happened to be performed by a lawyer." **Abrams**, 805 F.2d at 536 (quoting **Johnson v. Georgia Highway Express, Inc.**, 488 F.2d 714, 717 (5th Cir. 1974)).

Similarly, the district court must determine reasonable hourly rates for the billing attorneys or paralegals. A reasonable hourly rate is determined with reference to the prevailing market rate in the relevant legal community for similar work. *See* **Leroy v. City of Houston**, 906 F.2d 1068, 1079 (5th Cir. 1990). While the hourly rate must be "adequate to attract competent counsel," the "measure is not the rates which lions at the bar may command." **Id**. (internal quotations omitted). The burden of demonstrating reasonableness is on the fee applicant. *See* **id**. Factual determinations relating to the number of hours reasonably expended and the reasonable hourly rate are reviewed for clear error. *See* **Migis**, 135 F.3d at 1047.

In the second step, the district court must consider whether the circumstances of the case merit an upward or downward adjustment of the lodestar amount. That determination is informed

by a consideration of the twelve factors defined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See*, *e.g., Rivera*, 106 S. Ct. at 2691 n.3. The *Johnson* factors are favorably cited in both the House and Senate Reports accompanying 42 U.S.C. § 1988, and have likewise been adopted by the Supreme Court. *See*, *e.g.*, *id.* at 2691.

The *Johnson* factors are more than just a laundry list of factors to be systematically passed upon once a determination of the lodestar amount is made. Indeed, this Court has emphasized that the *Johnson* factors are relevant to and may often "govern the determination of reasonableness itself." *Abrams*, 805 F.2d at 536. The district court's application of the *Johnson* factors, its decision whether to depart from the lodestar amount, and thus, the ultimate fee award, are reviewed for an abuse of discretion. *See Migis*, 135 F.3d at 1047; *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995).

In this appeal, the defendants challenge the district court's determination of the reasonable number of hours expended and its final determination that the fee request was reasonable.

### III.   THE REASONABLE NUMBER OF HOURS

The district court did not enter an order addressing the defendant's specific objections to Coleman's fee petition, and the transcript of the brief hearing in the district court provides the only discussion of the district court's reasoning.  The district court first held that Coleman was a "prevailing party" and therefore entitled to attorney fees.  *See* 42 U.S.C. § 1988.  The defendants do not directly challenge that finding on appeal.  The district court then rejected any approach that would require a segregation of successful arguments as opposed to unsuccessful arguments for the purpose of parsing the fee award.  Using that rationale, the district court addressed and rejected the defendants' argument that Coleman should not recover for hours that were billed for or during defendant Ellis' appeal from the district court's order denying qualified immunity.  The district court did not otherwise address the defendants' specific challenges to the number of hours reasonably expended on the litigation.

### A.   The Prior Appeal

On appeal, the defendants argue that Coleman should not recover for any hours expended on the Fifth Circuit appeal, which the defendants say Coleman "lost," and defendant Ellis "won."

9

As an initial matter, we note that Ellis did not unambiguously "win" the appeal. While it is true that this Court reversed the district court's order denying summary judgment, our prior opinion is narrowly drafted to find error with the assumption used by the district court to deny qualified immunity; that is, that Ellis might still be liable to Coleman even if Ellis did not intentionally discriminate against Coleman because Hornsby's discriminatory intent, if any, could be imputed to Ellis. *See Coleman,* 113 F.3d at 535 ("[W]e emphasize that our decision in this interlocutory appeal is limited to the narrow legal proposition that a district court may not impute the alleged discriminatory motivations of a superior to a subordinate for purposes of the qualified immunity analysis."). The opinion does not render judgment that Ellis is entitled to qualified immunity, and in fact, expressly leaves open the question of whether an order denying qualified immunity might otherwise be appropriate, stating:

> [W]e express no opinion as to whether the court erred in assuming that Ellis did not intentionally discriminate against Coleman; nor do we consider whether a genuine issue of material fact exists concerning the allegations of intentional discrimination on the part of Ellis. On remand, the district court is free to entertain this alternate ground for denying qualified immunity.

*Id*. (footnote omitted).

On remand, Ellis did not seek, and was not granted, dismissal from the case in her individual capacity. Thus, Coleman's claims against Ellis were live claims at the time the parties reached settlement. Indeed, Coleman's claims against HISD, Ellis, and Hornsby as to the Ryan Middle School position were the only live

10

claims remaining to be settled when the parties agreed to settle the case. Crawford and Hornsby had already been granted qualified immunity as to Coleman's claims relating to the Jones High School position. The defendants' argument that the appeal was an unqualified success for their side is without merit. Thus, it is reasonable to say, on the force of the settlement, that Coleman "prevailed" in her claims against Ellis.

Moreover, there is ample authority for the proposition that a partially prevailing party may recover all reasonably incurred attorney fees, even though the party did not prevail on all claims, as to all defendants, or as to all issues in a matter. *See*, *e.g.*, **Hensley**, 103 S. Ct. at 1940 (1983); **Kellstrom**, 50 F.3d at 327; **Cobb v. Miller**, 818 F.2d 1227, 1233 (5th Cir. 1987). When the plaintiff has prevailed as to some claims, and failed as to others, the key is whether the successful and unsuccessful claims are based upon the same facts and legal theories, i.e. whether the claims are related. *See* **Hensley**, 103 S. Ct. at 1940. When the successful and unsuccessful claims involve a "common core of facts" or are based upon "related legal theories," then attorney fees incurred in the presentation of unsuccessful claims are recoverable on the theory that they contributed to the plaintiff's ultimate success. **Id**. Similarly, a prevailing party may not recover for hours devoted solely to claims against defendants as to whom the plaintiff did not prevail. *See* **Kellstrom**, 50 F.3d at 327. "But when claims against multiple parties share a common core of facts or related legal theories, a fee applicant may claim all hours reasonably

11

necessary to litigate those issues." *Id.* (internal quotations omitted).

In this case, Coleman named HISD, Hornsby, and Ellis in her claim that she was denied a position at Ryan Middle School. Although Ellis appealed the district court's denial of qualified immunity from suit, she was never granted qualified immunity or otherwise dismissed from the suit prior to settlement of the claims against her. Thus, the claims against Ellis at the time of appeal and the claims ultimately settled in Coleman's favor are identical. We conclude that the district court did not clearly err by including as a category certain hours billed as a consequence of Ellis' prior appeal on the issue of qualified immunity.

Neither did the district court clearly err by including time billed during the pendency of the appeal. The defendants argue that Coleman should not be able to recover for hours billed while the appeal was pending because the case was stayed in the district court between March 29, 1996 and May 19, 1997, when this Court issued its opinion in *Coleman.*

We disagree. Ellis appealed in April 1996. Although the case was later closed for statistical purposes in July 1996, Coleman filed a motion for leave to amend her pleadings, together with an amended complaint, while the appeal was pending in January 1997. Moreover, Coleman's attorneys were also pursuing an EEOC right to sue letter while the appeal was pending.

Defendants acknowledge that Coleman was continuing work on an amended complaint and the EEOC right to sue letter, and do not

12

argue that the time billed for those activities should be excluded from Coleman's recovery. Rather, the defendants argue that time not clearly tied to either the Fifth Circuit appeal, the amended complaint, or the EEOC right to sue letter should be excluded.

Having conducted an independent review of the billing records, we are able to find only 20 otherwise recoverable attorney hours (11.75 billed by Stuart Nelkin at $350.00 and 8.25 billed by Kenneth Krock at $200.00/hour), and 6.5 otherwise recoverable support staff hours (all billed by Kenneth Krock before he was admitted to the bar) that fall within this category. Most of these hours are billed for either meeting with or reviewing correspondence from Coleman or opposing counsel. Many of these hours are clustered around significant events occurring in the appeal, such as the designation of the appellate record, the filing of the appellate briefs, and oral argument. While more detailed entries specifying the reason for certain calls or meetings would certainly have been desirable, we cannot, on the basis of this record, conclude that the district court erred by including these hours as a category of recoverable time.

For the foregoing reasons, we hold that the district court did not clearly err by refusing to reduce Coleman's request for attorney and support staff fees by excluding hours billed as a consequence of, or during the prior appeal of this case to our Court.

B.  **Duplicative and Unnecessary Entries**

13

Defendants argue that Coleman should not be permitted to recover attorney fees for hours that law clerk Kenneth Krock spent attending, rather than participating in, or conducting depositions. The billing records reflect that Krock spent at least 17 hours attending depositions conducted by one of the Nelkins. Krock also billed an additional six hours preparation time for the depositions. The defendants challenge this time as duplicative and unnecessary.

We agree. Coleman does not contend that Krock actively participated, even in a supporting role, during the deposition. "[H]ours spent in duplicative activity or spent in the passive role of an observer while other attorneys perform[]" is generally not recoverable. *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982). We conclude that the 17 hours billed as observation time should have been excluded from the determination of reasonable hours by the district court. That principle does not, however, require exclusion of Krock's preparation time, which could have been legitimately incurred preparing materials for the partner's use.

For the foregoing reasons, the number of hours submitted for the work of law clerk Krock will be reduced by 17 hours in the final fee award.

Defendants also object to certain facially duplicative entries. For example, defendants challenge Stuart Nelkins' dual entries for client meetings on January 31, 1996, and for reading a client letter on May 22, 1996. Having reviewed the record, and the arguments of the parties, we agree that these entries are suspect.

14

A total of one hour will be deducted from the total number of hours billed by Stuart Nelkin to account for these duplications.

Defendants also challenge an August 14, 1995 entry for 4.5 hours of "legal research" performed by law clerk Kenneth Krock. Defendants argue the research was unnecessary, and alternatively, that the entry is too vague to support recovery.

We disagree. There is nothing patently unreasonable about conducting preliminary research on a case once it is initiated. In addition, we have declined to find clear error when an award was premised upon similar entries. *See* **Kellstrom**, 50 F.3d at 327. The district court's inclusion of the 4.5 hours billed by Kenneth Krock on August 14, 1995 was not clearly erroneous.

Defendants also challenge the district court's decision to permit Coleman to recover for hours expended on what they claim are unrelated matters. When investigating this case, Coleman's lawyers discovered that a Hispanic group had filed suit against HISD alleging system-wide discrimination. Coleman's position in this litigation was that HISD inappropriately responded to that suit and political pressure by exercising a racial preference in favor of Hispanics. Defendants object to several hours billed to research news articles and to obtain videotape records of the Hispanic community's protests against HISD.

Coleman's counsel also learned that the Texas Comptroller was conducting an audit of HISD, including their hiring and promotion policies. Counsel claims that they were contacted by the Comptroller for information about Coleman's case and decided to

15

cooperate because they thought any resulting report would be beneficial to her case. Defendants object to several hours billed for conversations with the Texas Comptroller and for making copies for the Comptroller.

Defendants argue that none of this time is recoverable because it was not spent "on the litigation" of the matter, citing several district court cases, including *Watkins v. Fordice*, 807 F. Supp. 406 (S.D. Miss. 1992) (holding that "plaintiffs' attorneys' legislative lobbying work and their work relating to the Justice Department's review of the State's Section 5 submission were not 'necessary' to advance the litigation."). The cited cases prohibit recovery for tangentially related investigation that benefits or may benefit the attorney in more than one case. There is undoubtedly a fine line between necessary investigation and unjustified over billing. But counsel's investigation of the suit by Hispanics against HISD was clearly related to her theory that HISD was systematically favoring Hispanic administrators. There is, therefore, no error in the district court's decision to include the relatively few hours at issue as part of a reasonable investigation of Coleman's claims.

## C.   Client Communications

Defendants also argue that Coleman's attorneys billed an excessive amount of time for client communications. Coleman's counsel billed approximately 66 hours for activities that can be characterized as client communications, such as meetings, telephone

16

calls, and either preparing correspondence to or reviewing correspondence from the client.[4] Defendants note that Coleman was not deposed and that she was not asked to respond to any written discovery. They therefore suspect that counsel was merely holding Coleman's hand and request that the time be reduced by fifty percent. Defendants are particularly perturbed by the lengthy phone calls and meetings because they believe many occurred during normal working hours when HISD was already paying Coleman to work.

We consider this a very close issue. Attorneys are required to exercise sound billing judgment, *see* **Hensley**, 103 S. Ct. at 1939-40, and the inclusion in this case of a large number of hours for client communications, without any elaboration with respect to the purpose or aim of the communication, and without any mention of the objective to be sought with respect to such communication, is sufficient to call the judgment of the billing attorneys into question. On the other hand, we note that many of the client communications billed in this case can be tied to significant events in the litigation. To the extent that client communication became excessive when the need arose, we note that only about one-third of the hours billed as client communications were billed by a partner at the higher $350.00/hour rate. Most of the hours billed as client communications were in fact billed by support staff rather than by attorneys.

_____

[4] As noted in the defendants' briefs, an exact determination of the time spent on client communication is not possible because entries containing multiple tasks are not segregated.

17

It may well be that Coleman was more demanding than good billing judgment allows. In any event, this case comes about as close to the boundary between justifiable client communication and indulgent over billing as we can imagine. Nonetheless, we are ultimately persuaded by the deferential standard of review that we are not able, on the basis of this record, to second-guess the district court's judgment. While we may disagree with respect to the permissible number of hours that should have been expended communicating with Ms. Coleman, we are not able to say that the district court's determination of the reasonable number of hours in this regard is clearly erroneous. Likewise, we are not able to say that the district court's refusal to reduce the number of hours reasonably requested was an abuse of discretion. For these reasons, we conclude that the district court's refusal to reduce the number of hours billed as client communications is not clearly erroneous.

### D.   Clerical Overtime

Defendants challenge 23.25 hours billed by clerical staff. All of this time was billed as overtime. Defendants argue that, without regard to the issue of whether clerical staff time can ever be separately billed, there is no factual or legal justification for permitting the Nelkins' office staff to be compensated for overtime. Neither the fee petition nor the briefs explain why overtime was necessary. In addition, the district court expressly noted, as part of its *Johnson* analysis, that there were no unusual

18

time restrictions in the case.

We agree.  The 23.25 hours billed as clerical staff overtime will be deducted from the total number of compensable hours.  Our holding in this regard eliminates the need to address whether the hourly rates requested for those staff members were reasonable.

**E.   Clerical Work Performed by a Paralegal**

Finally, the defendants raise certain objections to hours billed by paralegal "WSL" at $80.00/hour for "filing documents." Paralegal expense is recoverable only to the extent that the work performed is similar to that typically performed by lawyers.  ***Allen v. United States Steel Corp.***, 665 F.2d 689, 697 (5th Cir. Unit B 1982).  Otherwise, paralegal expense is an unrecoverable overhead expense.  *See **id**.*  "Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."  ***Missouri v. Jenkins***, 109 S. Ct. 2463, 2472 n.10 (1989).

Neither the record nor applicable precedent supports the use of a relatively expensive paralegal to file documents.  The 3.5 hours billed by paralegal "WSL" for "filing documents" will be deducted from the total number of hours in the fee petition.

On the basis of the foregoing analysis the district court's determination of the number of hours reasonably billed will be reduced as follows: Stuart Nelkin's hours will be reduced from 194 to 191; Carol Nelkin's hours will remain the same at 14.75 hours; Kenneth Krock's hours as an attorney will remain the same at 46.75

19

hours; "MFH"'s hours will remain the same at 17.75 hours; Kenneth Krock's hours as a law clerk will be reduced from 158.75 to 141.75; paralegal "WSL"'s hours will be reduced from 12 to 8.5; paralegal "EBB"'s hours will remain the same at 68.75; paralegal "CLC"'s hours will remain the same at 9.25; and the 23.25 hours billed as clerical overtime will be deleted entirely.

## IV.  THE REASONABLE HOURLY RATE

We must next consider the district court's determination that the hourly rates requested by Coleman's counsel were reasonable. Coleman requested that partners be compensated at the rate of $350.00/hour, that associate attorneys be compensated at the rate of $200.00/hour, and that the law clerk and the paralegals be compensated at the rate of $80.00/hour.  Defendants objected to these rates, submitting evidence that the maximum reasonable billing rate for an experienced partner would be about $240.00/hour, while relatively new associates should be billed at only $125.00/hour.  The district court held that the highest reasonable hourly rate would ordinarily be $250.00, but that "because of the contingency," the rate of $350.00/hour for partners, with similar upward adjustments in the rates for associates and paralegals, was justified.

Based upon our review of the record, we agree with the district court that the reasonable hourly rates in this case are much lower than those requested by Coleman.  In our view, a reasonable hourly rate for similar work in the relevant legal

20

market would place partner compensation at $250.00/hour, associate compensation for Kenneth Krock and "MFH" at $125.00/hour, and law clerk and paralegal compensation at $65.00/hour. We likewise agree with the district court that some upward adjustment for contingency is appropriate. Coleman presented evidence that the complexity of civil rights litigation and the delay attending payment of the fees in civil rights litigation potentially deters accomplished practitioners from accepting such cases on a contingent fee basis. Coleman claimed in the district court, and again on appeal, that while she initially agreed to pay her attorney fees, the payment of fees became, at some point, contingent upon a successful outcome. While the terms of any contract engaging the attorneys' services is not determinative with respect to the reasonable hourly rate that may be used to calculate a lodestar amount, we agree with Coleman that the inherent risk of loss and the lengthy delay in recovering attorney fees are material to our determination of a reasonable hourly rate. *See **Blanchard v. Bergeron***, 109 S. Ct. 939, 944-46 (1989).

All things considered, however, and with due consideration of the record evidence, we conclude that those factors justify a more modest increase for partner compensation from $250.00/hour to $275.00/hour, in associate compensation from $125.00/hour to $137.00/hour, and in law clerk and paralegal compensation from $65.00/hour to $72.00/hour. The district court's decision setting the reasonable hourly rates much higher because of a "contingency factor" was clearly erroneous. The lodestar calculation carried

21

out below will be based upon those rates.

## V. Overall Reasonableness under *Johnson*

Defendants also make several challenges to the overall award on the basis of the **Johnson** factors. The most critical **Johnson** factor is the degree of success obtained. *See* **Hensley**, 103 S. Ct. at 1941. Defendants maintain that Coleman's recovery was minute in comparison to what she sought.

We disagree. The district court ordered HISD to place Coleman in an administrative position comparable in status and pay to an assistant principal position. Coleman's salary in that position was more than $7,000 higher than her teacher salary. At the conclusion of the suit, the settlement provided that Coleman would be given such a position permanently. Defendants also argue that Coleman's recovery of attorney fees is unreasonable because it is disproportionate to her monetary recovery, citing **Migis v. Pearle Vision, Inc.**, 135 F.3d 1041 (5th Cir. 1998).

The Supreme Court has flatly rejected a bright-line rule that attorney fees under § 1988 must be proportionate to the damages recovered. *See* **Rivera**, 106 S. Ct. at 2697 ("We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."). Moreover, the extent of success is not measured solely by monetary damages. *See* *id*. ("a civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."). Thus,

22

while the amount of monetary damages recovered should be considered as one of the twelve *Johnson* factors, it should not be given determinative effect where the plaintiff has received other meaningful relief.

Coleman's victory in this case was substantial enough to support the award of fees as modified by this opinion. We find no abuse of discretion in the district court's rejection of the defendants' arguments to the contrary.

## CONCLUSION

The district court's award of attorney and support staff fees in the amount of $107,000, plus $4,947.43 in costs and expenses is VACATED and judgment is RENDERED granting Coleman attorney and support staff fees in the amount of $81,851.75, plus $4,947.43 in costs and expenses.

23